DOROTHY M. THOMPSON, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 36665-85.        Filed September 21, 1987.

*Nora A. Bailey*, for the petitioner.
*Clement Shugerman*, for the respondent.

SCOTT, *Judge*: Respondent determined a deficiency in petitioner's Federal individual income tax for 1982 in the amount of $31,339.85. By amendment to petition filed January 9, 1987, petitioner seeks a refund of a portion of the taxes paid. The issues for decision are: (1) Whether a back pay award in the amount of $66,795.19, received by petitioner pursuant to the Equal Pay Act, 29 U.S.C. sec. 206(d) (1976) (Equal Pay Act), and tit. VII of the Civil

Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. sec. 2000e-2, et seq. (tit. VII), in a suit against the Public Printer is excludable from income under section 104(a)(2)[1] as "damages received for personal injuries"; and (2) whether an award of liquidated damages in the amount of $66,135.27 received by petitioner pursuant to the Equal Pay Act, 29 U.S.C. sec. 216(b), as a result of this suit is excludable from income under section 104(a)(2) as damages received for personal injuries.

## FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Petitioner, who resided in Alexandria, Virginia, at the time of the filing of her petition in this case, filed an individual income tax return for the calendar year 1982.

Petitioner has been an employee of the U.S. Government Printing Office (GPO) since 1965. From 1965 through 1981, she was employed at the GPO as a Wage Board Grade 4 Journeyman Bindery Worker Smyth Sewing Machine Operator.

Petitioner was the lead plaintiff in a class action sex discrimination claim filed against her employer, the Public Printer as head of the GPO, on May 25, 1973. During calendar year 1982, the GPO was found, in *Thompson v. Sawyer*, 678 F.2d 257 (D.C. Cir. 1982), affg. in part and revg. in part *Thompson v. Boyle*, 499 F. Supp. 1147 (D. D.C. 1979), to have discriminated against petitioner in violation of tit. VII and the Equal Pay Act by failing to pay petitioner the same wage paid to certain males for work the performance of which required skill, effort, and responsibility substantially equal to that required for jobs performed by such males. In the complaint, the following allegations were made—

### III. *Parties*

3. Plaintiff Thompson is a citizen of the United States and a resident of Hyattsville, Maryland. Plaintiff Thompson is currently employed as a

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Wage Board Grade 4 Journeyman Bindery Worker in the Binding Division of the GPO. She has been employed in the Binding Division since October 1965.

\* \* \* \* \* \* \*

8. The GPO is a unit of the legislative branch of the Federal Government having positions in the competitive service within the meaning of 42 U.S.C. section 2000e-16(a) and section 6 of Executive Order 11478. Defendant Thomas F. McCormick is the Public Printer of the United States and is named as Defendant in his official capacity as head of the GPO as prescribed in 42 U.S.C. section 2000e-16(c) and Section 2 of Executive Order 11478.

## IV. *Class Action Allegations*

9. The named Plaintiffs bring this action on their own behalf and on behalf of all other female Journeyman Bindery Workers in the Binding Division of the Production Department of the GPO, pursuant to Rule 23(a) and 23(b)(2)-(3) of the Federal Rules of Civil Procedure and Local Rule 1-13.

\* \* \* \* \* \* \*

## VI. *Statement of Claims*

26. It is the contention and belief of Plaintiffs that Defendant is engaged in a widespread consistent patter and practice of sex discrimination throughout the Production Department of the GPO, which discrimination has resulted and continues to result in female employees in the Production Department being kept in lower paying positions, being denied advancement opportunities, and in some instances being prevented from receiving pay and advancement opportunities equivalent to those received by males who perform comparable work. \* \* \*

### A. *Introduction: General Description of Patterns and Practices of Sex Discrimination in Production Department*

27. On information and belief, there are approximately 8,000 employees in the GPO, 3,977 of whom work in the Production Department. Except for management positions, jobs in the Production Department are basically classified in two categories, craft and noncraft. Employees who are classified as "craftsmen" generally perform jobs which are recognized in the printing industry as skilled trades or crafts, and employees who are classified as "noncraftsmen" generally perform unskilled, semi-skilled, or skilled manual labor. Craftsmen in the Production Department receive wages substantially higher than those received by noncraftsmen, and only craftsmen are entitled to compete for supervisory training and Printing Specialist positions. Currently, 2,015 of the 3,977 employees in the Production Department are classified as craftsmen. Another 285 employees in the Production Department hold management supervisory positions, including foreman, assistant foreman and group chief positions.

28. Females hold only 558 of the 3,977 positions in the Production Department. No females in the Production Department hold management supervisory positions. And only 35 of the 558 females employed in the Production Department hold craft positions. * * *

\*　\*　\*　\*　\*　\*　\*

32. As indicated by Table I, *supra*, 455 of the 558 females employed in the Production Department are assigned to the Binding Division, and, as indicated by Table II, none of the 455 females in the Binding Division hold craft positions. * * *

\*　\*　\*　\*　\*　\*　\*

33. Most of the 279 males in the Binding Division classified as craft Bookbinders are machine operators who operate the various machines in the Binding Division that are necessary in the bookbinding operation. In addition, a number of the craft Bookbinders perform some of the handwork that is necessary in the bookbinding operation, including book repair, indexing, and tablet making. All Bookbinders are paid $7.51 per hour (compared with wages ranging from $5.29 to $5.92 per hour paid Journeyman Binder Workers—see Table IV, *infra*), and are eligible to compete for supervisory training and Printing Specialist positions. * * *

\*　\*　\*　\*　\*　\*　\*

(b) *Claim I: Discriminatory Classification of Bindery Worker Sewing Machine Operators*

36. All Wage Board Grade 4 Bindery Workers who operate Smyth Sewing Machines and all Wage Board Grade 3 Bindery Workers who operate Singer Sewing Machines and Oversewing Machines have been and are entitled to craft status, but Defendant has refused to reclassify their positions. The Classification Expert described in Paragraph 15, *supra*, has found that there is no basis for placing the Smyth Sewing Machine Operators in a job classification separate and distinct from the classification applied to Bookbinder machine operators. (The Expert did not perform a classification study of the Singer Sewing Machines and Oversewing Machines.)

\*　\*　\*　.\*　\*　\*　\*

39. In addition to being denied pay equal to that received by Bookbinders for equivalent work and the opportunity to compete for supervisory training and Printing Specialist positions, Bindery Worker sewing machine operators are discriminated against in other respects on the basis of sex. * * *

\*　\*　\*　\*　\*　\*　\*

C. *Conclusion*

51. The acts and practices described in Paragraphs 12 through 50, *supra*, deprive Plaintiffs and the class of females they represent of their rights to equal employment opportunities in the GPO and violate their

rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000e *et seq.* (1970), as amended by the Equal Employment Opportunity Act of 1972, 42 U.S.C. section 2000e-16 (Supp. II, 1972); the Equal Pay Act of 1963, 29 U.S.C. section 206(d) (1970); 44 U.S.C. section 305 (1970); Executive Order 11478, 34 F.R. 12985 (1969), as amended by Executive Order 11590, 36 F.R. 7831 (1970), 3 C.F.R. 214 (1973); and the Fifth Amendment to the United States Constitution. Unless restrained by order of this Court, Defendant will continue to engage in these or similar acts and practices.

### VII. *Relief Requested*

52. The Plaintiffs pray that the Defendant, his agents, employees, assigns, successors in office, and all persons in active concert or participation with him, or any of them, be permanently enjoined from engaging in any discriminatory employment practices against females in the Production Department or in any practice which operates to continue the present effects of past discriminatory employment practices with respect to employment opportunities of females in the Production Department.

53. The Plaintiffs pray that this Court issue a permanent injunction ordering Defendant to develop an effective continuing affirmative program, as required by Executive Order 11478 and 5 C.F.R. section 713.203 (1973), designed to cure the present effects of past sex discrimination in the Production Department, * * *

\*      \*      \*      \*      \*      \*      \*

55. The Plaintiffs pray that this Court issue a permanent injunction ordering Defendant immediately to reclassify all Bindery Workers who operate sewing machines as craftsmen entitled to the same pay, seniority rights, working conditions, and advancement opportunities as Bookbinders.

\*      \*      \*      \*      \*      \*      \*

61. The Plaintiffs pray that this Court issue a permanent injunction ordering Defendant to provide for an impartial review of any supervisory evaluations of Bindery Workers in connection with their future attempts to advance to supervisory or Printing Specialist positions or in connection with their attempts to enter the Graphic Arts Training Program or the Apprenticeship Program, * * *

\*      \*      \*      \*      \*      \*      \*

63. The Plaintiffs pray that this Court award appropriate back pay to them and to all other Bindery Workers who are determined to have performed work equivalent to that performed by Bookbinders.

\*      \*      \*      \*      \*      \*      \*

65. The Plaintiffs pray that this Court provide such additional relief, including the relief requested in the Group Complaint (Exhibit A), as justice may require to eliminate the present discrimination and the

present effects of past discrimination against Plaintiffs and the class they represent.

During calendar year 1982, the GPO, as ordered in the above court decisions, paid to petitioner back pay wages of $66,795.19 under tit. VII and the Equal Pay Act, and liquidated damages of $66,135.27 under the Equal Pay Act; 29 U.S.C. section 216(b).

In *Thompson v. Sawyer, supra,* the Court of Appeals, in determining whether retroactive application of the liquidated damages provision would contravene the constitutional ban on ex post facto laws, held that the liquidated damages to be paid to petitioner were compensatory rather than penal in nature and were intended to compensate for intangible losses—difficult to measure—but nevertheless the consequences of unfair wages. See *Thompson v. Sawyer, supra* at 281.

Under 29 U.S.C. section 216(b), liquidated damages in an amount equal to the unpaid wages due the employee under the Equal Pay Act are automatically payable by an employer who has been found to have violated the statute, without any additional showing (aside from showing the original violation of the Equal Pay Act) of loss or harm to the employee. As a result, no additional showing of harm was required to support the award of liquidated damages, and no such evidence was presented at trial.

A trial judge may, in the exercise of discretion granted under 29 U.S.C. section 260, remit all or a part of the liquidated damages if the trial judge determines that the employer had reasonable grounds for believing that it was not in violation of the Equal Pay Act. The trial judge declined to exercise his discretion to remit liquidated damages in the *Thompson v. Sawyer,* case, *supra,* and his decision was upheld on appeal.

The District Court in its opinion, *Thompson v. Boyle,* 499 F. Supp. 1147, 1166-1172, 1178 (D. D.C. 1979), stated in part as follows:

The Court finds further that jobs of individual plaintiffs at the grade 4 JBW [grade 4 Smyth Sewing Machine Operator] level and jobs of individual bookbinders are substantially equal in skill, effort, responsibility and working conditions. * * *

Since plaintiffs have demonstrated that the individual jobs performed by female grade 4 JBWs are substantially equal, in job content, skill, effort, responsibility and working conditions to individual jobs performed by higher paid male bookbinders, defendant has the burden of proving that the wage differential is justified under one of the Equal Pay Act four exceptions * * * . Defendant has not met its burden on this issue. * * *

[5] In sum, the Court finds that the defendant has violated the Equal Pay Act, 29 U.S.C. section 206(d)(1) (1976), by paying higher wages to male bookbinders than to female grade 4 JBWs for equal work on jobs the performance of which requires equal skill, effort, responsibility and which are performed under similar working conditions. * * *

### III. CONCLUSION.

In accordance with the foregoing, the Court finds that the defendant has violated (1) Title VII of the Civil Rights Act of 1964, as amended, as to the entire class of plaintiffs, and (2) The Equal Pay Act of 1963, as amended, as to grade 4 JBWs. * * *

\*    \*    \*    \*    \*    \*    \*

### II. *Permanent Injunctive Relief*

Congress has granted courts plenary equitable powers under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. section 2000e-5(g) (1976), for constructing appropriate remedies for employment discrimination. Pursuant to the authorization, plaintiffs seek a permanent injunction restraining the defendant from discriminating against the class plaintiffs on the basis of sex in any aspect of employment. * * *

The broad injunctive relief requested by plaintiffs is clearly appropriate under the facts of this case. Although injunctive relief is within the discretion of the Court, absent clear and convincing proof of no probability of further noncompliance with the law, a grant of injunctive relief under Title VII is mandatory. *James v. Stockham Valves and Fitting Co.*, 559 F.2d 310, 354 (5th Cir. 1977), *cert. denied*, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 781 (1978). Here, the Court cannot discern clear and convincing proof of no probability of further noncompliance with the law.

\*    \*    \*    \*    \*    \*    \*

### III. *Back Pay*

[6] Plaintiffs have requested the Court to award them back pay under the provisions of Title VII and the Equal Pay Act. Based upon the Court's findings and conclusions, it is clear that plaintiffs are entitled to relief in the form of back pay. However, there is substantial dispute between the parties as to the nature and scope of such an award under Title VII in this case.

\*    \*    \*    \*    \*    \*    \*

The Court's final finding was with respect to the plaintiffs' allegations under the Equal Pay Act of 1963, as amended, 29 U.S.C. section 206(d)(1) (1976). On the basis of compelling evidence illustrating that jobs of individual plaintiffs at the grade 4 JBW level and jobs of individual Bookbinders are substantially equal in job content, skill, effort, responsibility and working conditions, the Court found that the defendant violated the Equal Pay Act by paying higher wages to male Bookbinders than to female grade 4 JBWs. *Id.* at 1167.

\*     \*     \*     \*     \*     \*     \*

The Court is not prepared to conclude that the elimination of the disparate advancement opportunities, resulting in part from the separate classification of JBW and Bookbinder positions, mandates the imposition of equal wages for all of the various positions. The distinction between "Craft" and "Non-craft" employees on its face does not offend Title VII in the context of this case. Rather, it is the foreclosure of advancement opportunities to JBWs resulting from the separate classification system and the apprenticeship program *operating together* which cannot withstand Title VII scrutiny. Compensation for the economic loss caused by this foreclosure simply does not entail the imposition of equal wages for JBWs and Bookbinders. The Court specifically found that JBW grades 2, 3 and 5 were not entitled to wages equal to those earned by Bookbinders because plaintiffs had failed to prove substantial equality of the various positions. \* \* \*

\*     \*     \*     \*     \*     \*     \*

B. *Back Pay under the Equal Pay Act.*

The Court found that defendant violated the Equal Pay Act of 1963, as amended, 29 U.S.C. section 206(d)(1) (1976), by paying higher wages to male Bookbinders than to female grade 4 JBWs for equal work on jobs the performance of which requires equal skill, effort, responsibility and which are performed under similar working conditions. *Opinion* at 1167. \* \* \*

The term "prevailing Equal Pay Act plaintiffs" shall refer collectively to the five-named plaintiffs and the 23 other grade 4 JBWs, listed on Exhibit A to the Court's remedial order, who became parties plaintiff with respect to the Equal Pay Act aspects of this lawsuit pursuant to 29 U.S.C. section 216(b). The Court granted judgment to defendant on the Equal Pay Act claims of all JBWs other than grade 4 because plaintiffs failed to prove substantial equality of the Bookbinder positions and the positions of JBW grades 2, 3 and 5. *Id.* at 1167.

The prevailing Equal Pay Act plaintiffs are entitled, as a matter of right, to the relief set forth in 29 U.S.C. sections 216-17: (1) back pay as a result of the initial wage differential; and (2) an amount equal to the back-pay award as liquidated damages; and (3) reasonable attorneys' fees and costs of the action.

1. *Back Pay as a Result of the Initial Wage Differential.*

The prevailing Equal Pay Act plaintiffs are clearly entitled to receive an amount equal to the difference between the wages actually paid them during the relevant time period and the wages which would have been paid them had they been compensated as Bookbinders. The Court's remedial order includes a provision implementing such an award.

2. *Liquidated Damages.*

The standard for awarding liquidated damages under the Equal Pay Act, 29 U.S.C. sections 216, 260 (1976) was set forth by the Court of Appeals for this Circuit in *Laffey v. Northwest Airlines, Inc., supra*, 567 F.2d at 464-65:

Congress [conferred] the present discretion on the courts to limit or deny liquidated damages if the employer could meet the "substantial burden" of proving that his failure to comply was in good faith and also was predicated on reasonable grounds for a belief that he was in compliance. If the employer cannot convince the court in these respects, an award of liquidated damages remains mandatory * * *

(footnotes omitted). Under this standard, an award of liquidated damages to the prevailing Equal Pay Act plaintiffs is mandatory because defendant has failed to satisfy the Court that its failure to comply with the Equal Pay Act was in good faith. Accordingly, a provision awarding liquidated damages in an amount equal to the award of back pay shall be included in the Court's remedial order.

*     *     *     *     *     *     *

It is

FURTHER ORDERED, that with respect to each promotion position (as defined in this Order), each Title VII plaintiff shall be compensated as follows:

(1) With respect to each pay period between May 25, 1971, and the date hereof in which she received wages from defendant as a JBW, the difference between such wages and the wages she would have received on a pro-rata basis had JBWs filled one-half of all promotion positions (as defined in this Order) commencing August 8, 1969. * * *

(2) However, Grade 4 JBWs shall participate in payments, pursuant to the back pay award provided for above, only for lost promotional opportunities associated with the promotion positions (as defined in this Order) other than Journeyman Bookbinder.

## The Circuit Court in affirming the opinion of the District Court as to back wages, stated in part:

C. *The Remedy Under the Equal Pay Act*

An employer who violates the Equal Pay Act is subject to the remedial provisions of the Equal Pay Act's statutory parent, the FLSA. For relief purposes, the FLSA does not distinguish between wages that were

sexually discriminatory and wages that were deficient for other reasons, such as a failure to reach the current minimum. 29 U.S.C. sec. 206(b)(Supp. III 1979). * * *

In the case at bar, Judge Richey awarded the Smyth operators the difference between their actual wages and what they would have earned as bookbinders. J.A. 220. Because he found GPO's violation of the Equal Pay Act willful, J.A. 197, he specified that plaintiffs could recover back wages up to a limit of three years before the date they consented to join the suit. J.A. 216. He also awarded full liquidated damages to each Smyth operator. J.A. 220.

*   *   *   *   *   *   *

B. *The Remedy Under Title VII*

[26] Under Title VII, the court has extensive remedial powers. When it finds an intentional violation, the court may

order such affirmative action as may be appropriate, which may include, but is not limited to, reinstatement or hiring of employees, with or without back pay * * * or any other equitable relief as the court deems appropriate.

42 U.S.C. sec. 2000e-5(g) (1976). In exercising these powers, courts are to be guided by complementary aims: discouraging employers from discrimination, and compensating discrimination's victims as fully as possible. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975). In light of these goals, we commend the overall design of the Title VII remedy fashioned by Judge Richey, but remand for certain limited purposes.

*   *   *   *   *   *   *

[40] e. *Front Pay for Prevailing Equal Pay Act Plaintiffs*. Judge Richey constructed a back pay pool to compensate the Smyth operators for not having received their fair share of supervisory promotions. Although the Smyth operators will receive back pay under the Equal Pay Act, this additional back pay award did not give them duplicate recovery. The wrong of denying them promotions was separate from the wrong of paying them inadequately for their work as Smyth operators, and they are entitled to compensation for both.

Judge Richey did not, however, construct an analogous front pay pool for the Smyth operators. He gave no reason for the omission and we can discern none. Front pay recovery for the Smyth operators will not duplicate their Equal Pay Act recovery. Because promotion opportunities open infrequently, some time will' pass before the Smyth operators can bid on promotion positions. In the meantime, they will continue to suffer losses resulting from the prior foreclosure of promotion opportunities.

[678 F.2d at 278, 285-286, 293.]

Petitioner, on her Federal income tax return for 1982, included in income the back pay award of $66,795.19, but did not include the liquidated damages award of $66,135.27.

Respondent, in his notice of deficiency, increased petitioner's income as reported by the amount of the liquidated damages award of $66,135.27. After the trial, pursuant to leave granted, petitioner filed an amendment to petition alleging that under the holding of this Court in *Threlkeld v. Commissioner*, 87 T.C. 1294 (1986), on appeal (6th Cir., May 26, 1987), the $66,795.19 of back pay award was excludable from her income under section 104(a)(2) and that she was entitled to a refund of a portion of the income tax she paid for 1982.[2]

## OPINION

Section 61 includes in gross income "all income from whatever source derived" unless otherwise provided. One of the provisions for specific exclusions is in section 104(a)(2), which excludes from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness." While the Code does not define "damages received on account of personal injuries," section 1.104-1(c), Income Tax Regs.,[3] does provide some guidance in the resolution of this issue. Generally that section authorizes the exclusion of damages received as the result of a tort or tort-type claim for personal injuries.

Respondent, in this case, takes the position that neither the $66,795.19 received by petitioner as back pay nor the $66,135.27 received as an award of liquidated damages pursuant to the Equal Pay Act, 29 U.S.C. section 216(b), is excludable from petitioner's income under section 104(a)(2) since, in respondent's view, both amounts represented wage payments rather than damages for personal injury. Petitioner takes the position that both amounts are damages for

---

[2]Petitioner also made a claim in the amended petition for reasonable litigation costs pursuant to sec. 7430. At this time petitioner's motion is premature and should be filed according to Rule 231, Tax Court Rules of Practice and Procedure, if and when it is determined herein that petitioner has substantially prevailed.

[3]Sec. 1.104-1(c), Income Tax Regs., provides as follows:

(c) *Damages received on account of personal injuries or sickness.* Section 104(a)(2) excludes from gross income the amount of any damages received (whether by suit or agreement) on account of personal injuries or sickness. The term "damages received (whether by suit or agreement)" means an amount received (other than workmen's compensation) through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

personal injury and therefore excludable from her income under section 104(a)(2).

Petitioner takes the position that under our holding in *Threlkeld v. Commissioner, supra* (particularly that portion which states "Exclusion under section 104 will be appropriate if compensatory damages are received on account of any invasion of the rights that an individual is granted by virtue of being a person in the sight of the law." *Threlkeld v. Commissioner, supra* at 1308), she is entitled to exclude the back pay she received. She contends that she received this amount because of invasions of the rights granted to her by virtue of being a person. Her argument is in effect that the payment was not based on a contract, expressed or implied, and that any amount received as the result of a suit which is not based on a contractual right is received as damages granted to the individual by virtue of being a person.

Petitioner interprets our decision in *Threlkeld v. Commissioner, supra*, far too broadly. In that case, we held that an amount received by a taxpayer as damages to his professional reputation because of a defamation of his character was excludable under section 104(a)(2), even though it might have some relationship to loss of income. In so holding, we stated that we would no longer follow our opinion in *Roemer v. Commissioner*, 79 T.C. 398 (1982), revd. 716 F.2d 693 (9th Cir. 1983), but rather would accept the view of the Circuit Court of Appeals for the Ninth Circuit in that case. In arriving at our conclusion in *Threlkeld v. Commissioner, supra*, we discussed a number of prior cases decided by this Court in which amounts had been held not to be excludable under section 104(a)(2) as damages received for personal injury. We distinguished all those cases except *Roemer v. Commissioner, supra*. Our distinction was primarily on the ground that in those cases the facts showed that the payment received represented "the recovery of taxable earnings" rather than damages for a personal injury. We stated in *Threlkeld v. Commissioner, supra* at 1305, that "Because we have concluded that the appropriate question * * * is whether the damages were received on account of personal injuries, we must next decide what 'personal injuries' are." We further stated that "The ques-

tion is one of fact." We pointed out that section 104(a)(2) is substantially the same as its predecessor sections which have been in the Code since the Revenue Act of 1918 and that the legislative history of the Revenue Act of 1918 does not define personal injuries or sickness nor does the legislative history of the 1939 or 1954 Codes.

In the recent case of *Metzger v. Commissioner*, 88 T.C. 834, 847-848 (1987), we stated in this regard—

Section 104(a)(2) encompasses situations where the damages received are "by suit or agreement." In the context of a settlement agreement, determining the exclusion from gross income depends on the *nature* of the claim which was the actual basis for settlement, not the *validity* of the claim (*Seay v. Commissioner*, 58 T.C. at 37), the proper inquiry being in lieu of what were damages awarded. *Church v. Commissioner*, 80 T.C. at 1107; *Yates Industries, Inc. v. Commissioner*, 58 T.C. 961, 972 (1972), affd. without published opinion 480 F.2d 920 (3d Cir. 1973). If the settlement agreement lacks express language stating that the payment was (or was not) made on account of personal injury, then the most important fact in determining how section 104(a)(2) is to be applied is the "intent of the payor" as to the purpose in making the payment. * * *

In the context of a suit, if the trier of fact (jury or judge) does not indicate the basis on which the award was arrived, then to ascertain the nature of the damages it is necessary to examine the allegations contained in the taxpayer's complaints, the evidence presented, and the arguments made in the State court proceeding. *Threlkeld v. Commissioner*, 87 T.C. 1294 (1986); *Church v. Commissioner*, 80 T.C. at 1107.

In the instant case, the judge did determine that the $66,795.19 was back pay awarded to petitioner as a Grade 4 Smyth Sewing Machine Operator on the basis that her work was substantially equivalent to the work of a bookbinder and, therefore, she was entitled from 3 years before the filing of the suit to receive the difference in the pay she had received and a bookbinder's pay. Although it is clear that the back pay was received by petitioner because of her job being equivalent to a bookbinder's job,[4] petitioner argues that it was not received because of a contractual right but because of sex discrimination which is in the nature of a tort.

---

[4]Apparently some small portion of the $66,795.19 received by petitioner under tit. VII was because of being deprived of opportunities for promotion. It appears that $66,135.27 at least was back pay under the Equal Pay Act. Sec. 216(b). However, since the burden is on petitioner to show that any portion of the back pay was not granted under the Equal Pay Act, we will treat the matter as if it all was received under that act.

The Equal Pay Act is a part of the Fair Labor Standards Act. Section 206(d)(1) of the Fair Labor Standards Act (29 U.S.C. sec. 206(d)(1) (1976)) provides[5] that no employer having employees subject to any of the provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in the establishment at a rate less than the rate of wages paid to the opposite sex for "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions" (with exceptions, not here relevant). Section 206(d)(3) provides that "For purposes of administration and enforcement,[6] any amounts *owing* to any employee which have been *withheld* in violation of this subsection shall be deemed to be *unpaid minimum wages* or *unpaid overtime compensation* under this act." (Emphasis added.) Section 29 U.S.C. 216[7] provides *in part* "that any employer who violates the provisions of section 6 or 7 of this Act [29 U.S.C.S. sec. 206 or 207] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages or their unpaid overtime compensation, as the case may be."

---

[5]29 U.S.C. sec. 206(d)(1)—

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

[6]29 U.S.C. sec. 206(d)(3)—

(3) For purposes of administration and enforcement, any amounts owing to any employee which have been withheld in violation of this subsection shall be deemed to be unpaid minimum wages or unpaid overtime compensation under this act [29 U.S.C.S. secs. 201-206, 217-219, 557 (1976)].

[7]29 U.S.C. sec. 216(b) states in part—

Any employer who violates the provisions of section 6 or section 7 of this Act [29 U.S.C. sec. 206 or 207 (1976)] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. Action to recover such liability may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. * * *

In our view, contrary to petitioner's contention in this case, the back pay she received under the Equal Pay Act is not in the nature of damages for a tort or tort-type right. This is not to say that damages for sex discrimination may not be for a tort-type right, but rather that the amounts paid petitioner as back wages under the Equal Pay Act are not in the nature of damages for a tort-type right. The Equal Pay Act requires that an employer pay equal wages for equal work regardless of sex. The enforcement section refers to "any amounts owing" to an employee which have been "withheld" being paid and being "deemed to be" unpaid "wages" or unpaid "overtime compensation." The Equal Pay Act places an obligation on the employer to pay an equal amount for equal work regardless of sex. If an employer violates this obligation placed on it, it is required under the enforcement provisions to pay the back pay "owing" to the employee doing the equal work in the amount "withheld." In our view, an amount paid as back pay under this provision is more in the nature of a payment for a contract violation than for a tort-type right.

The court in the sex discrimination case determined that the work of the Grade 4 Smyth machine operators was substantially equal to a bookbinders' work. Therefore petitioner, a Grade 4 Smyth machine operator, was entitled to be paid at the same hourly rates as a bookbinder because she had been performing a job entitled to that pay. The specific amount ordered to be paid to her was the difference in the amounts she received and the hourly wages of a bookbinder. This amount was to be paid to her because it was an amount *owing* to her which had been *withheld*. One of petitioner's claims in this case was for back pay under the Equal Pay Act. In making this claim she was, in effect, claiming "amounts owing" to her as wages which had been "withheld" from her. Whether the rights created by the Equal Pay Act are considered as in the nature of contract and rights or some other right entitling a person to recover withheld pay, they are certainly not a claim for damages for the personal injury of sex discrimination. The claim which was allowed was for back pay because the work petitioner had done warranted that pay.

In our view, there is nothing in *Threlkeld v. Commissioner, supra,* that converts a claim for back pay, because an individual has been underpaid for the work he has done, into a claim for damages for a personal injury merely because the suit which involves such a claim may also have involved a tort-type action for personal injuries. In other cases which were not overruled in *Threlkeld v. Commissioner, supra,* we have held amounts received of unpaid salary or wages were not excludable under section 104(a)(2). One such case is *Hodge v. Commissioner,* 64 T.C. 616 (1975), which involved a settlement of a job discrimination suit under tit. VII of the Civil Rights Act. We held that the amount received by the taxpayer in the discrimination suit was not excludable under section 104(a)(2), since it was in the nature of wages. Our conclusion was based in part on the fact that, in the suit, the only claim was for a monetary award based on the difference between the salary that the taxpayer did receive and the salary he would have received if he had not been deprived through discrimination of a higher paying job. The instant case is in part more clearly a case of a wage claim than the *Hodge* case since it specifically involves a claim for back pay under the Equal Pay Act and not merely a combined claim under tit. VII. Here, part of petitioner's claim was for back pay due her for the work she had done. In *Fono v. Commissioner,* 79 T.C. 680 (1982), affd. without published opinion 749 F.2d 37 (9th Cir. 1984), we stated that the question to be asked is "in lieu of what were the damages awarded." If the conclusion is that the payment is in lieu of wages, the payment is not excludable under section 104(a)(2).[8]

---

[8]In *Metzger v. Commissioner,* 88 T.C. 834 (1987), the taxpayer had sought (1) an injunction requiring that she be given tenure, (2) 3 years' back pay, and (3) punitive damages. The case was settled in its entirety by the defendant college paying the taxpayer $75,000. "For tax purposes only" $37,500 was allocated by the parties to wage claims subject to withholding and the remaining $37,500 to all claims other than wage claims. The only amount in issue was the $37,500 which the parties had allocated to claims other than wage claims. We concluded we were not bound by the parties allocation since "this parties' settlement agreement denies the reality of the agreement." However, we did in the opinion recognize that two different type claims were settled. We discussed the case of *Hodge v. Commissioner,* 64 T.C. 616 (1975), and compared it to *Bent v. Commissioner,* 87 T.C. 236 (1986), in which we had concluded that the element of lost wages was not an independent basis for recovery. We recognized that an action may include two different type claims. We stated at page 858:

"We conclude that *Hodge* does not stand for the proposition that no damages received as a result of a proceeding under title VII are excludable under section 104(a)(2). Rather, excludability depends on what was the injury complained of, and the loss of income may

In *Threlkeld v. Commissioner*, *supra*, we stated at 1299:

whether the damages received are paid on account of "personal injuries" should be the beginning and the end of the inquiry. To determine whether the injury complained of is personal, we must look to the origin and character of the claim * * * and not to the consequences that result from the injury. * * *

In the instant case, the origin and nature of petitioner's claim for back pay was that her work was the same as a bookbinder's work and that the amount paid to a bookbinder was owing to her and had been withheld. In our view, petitioner's claim for back pay under the facts here present is not a claim for damages for personal injury, but rather is a claim for payment for work. We, therefore, conclude that petitioner is not entitled to exclude from her income in 1982, under section 104(a)(2), the back pay award she received.

The payment petitioner received as an award of liquidated damages in the amount of $66,135.27, pursuant to the Equal Pay Act, 29 U.S.C. sec. 216(b), presents a different problem. If this amount had been awarded to petitioner under the provisions of title VII of the Civil Rights Act it would, under our holding in *Bent v. Commissioner*, 87 T.C. 236 (1986), on appeal (3d Cir., Feb. 17, 1987), and more recently in the case of *Metzger v. Commissioner*, *supra*, be held to be damages for personal injury. In both the *Metzger* and *Bent* cases after analyzing a number of cases decided by various courts, including the Supreme Court, we concluded that claims brought alleging violation of a person's Federal civil rights might properly be viewed as tort claims brought to redress personal injuries. In *Davis v. Passman*,

merely be 'an evidentiary factor' (*Bent*) or 'the best measure of loss' (*Threlkeld*). In any event, *Hodge* is distinguishable from the instant case, in that, in the instant case (1) the evidence is clear that no effort was made to calculate an amount of back pay, (2) the evidence is clear that the college and petitioner sought to settle all the claims for a single lump sum, (3) the college believed that petitioner's contract claim might result in a liability of $15-20,000, and (4) most of petitioners' claims were tort or tort-type claims on account of personal injuries and were not for back pay, while Hodge's claim, as we have noted, was only for a back pay differential."

\*        \*        \*        \*        \*        \*        \*

"From the foregoing, we conclude (and we have found) that not less than $37,500 of the payment petitioner received from the college constitutes damages received on account of personal injuries and so at least that amount is excludable from petitioner's income under section 104(a)(2). Since petitioner has not sought to exclude any greater amount, we need not determine whether any greater amount is excludable."

442 U.S. 228 (1979), the Supreme Court held that a person dismissed by a congressman because of her sex could state a cause of action in a claim under the Fifth Amendment to the Constitution. In so holding, the Court pointed out that the equal protection component of the due process clause confers on a person a Federal constitutional right to be free from gender discrimination. In a footnote to that statement, the Court stated, "This right is personal; it is petitioner, after all, who must suffer the effects of such discrimination. See *Cannon v. University of Chicago*, 441 U.S. 677, 690-693, n. 13 (1979); cf. *Monongahela Navigation Co. v. United States*, 148 U.S. 312-326 (1893)." 442 U.S. at 235 n. 10. Since the right to be free from gender or sex discrimination is a personal right as the Supreme Court has held, it follows that payments of damages made for violation of that right are damages for personal injuries. We need not discuss in detail the various cases holding various forms of race or sex discrimination to be in the nature of claims for personal injury. These cases are numerous and have been discussed in detail in *Bent v. Commissioner, supra*, and *Metzger v. Commissioner, supra*, and in the Supreme Court case of *Davis v. Passman, supra*. Since we have held that a sex discrimination suit may be a suit for a personal injury, it is necessary to decide whether the amount of liquidated damages received by petitioner was received as compensation for this personal injury or was received as part of the back pay award.

The fact that by statute this award is measured by the amount of back pay due to petitioner, in our view, is not controlling. As we pointed out in *Threlkeld v. Commissioner, supra* at 1299, in referring to a defamatory statement that injures a person's professional reputation: "In such cases, the amount of income lost is an accurate measure of the damage sustained." We held, however, that this fact "in no way changes the nature of the claim." Similarly, in the instant case, the fact that the amount of the liquidated damages is measured by the withheld pay due petitioner is not controlling in determining the nature of the claim for which the amount was received. Liquidated damages are awarded where the employer cannot show that the sex discrimination was in good faith. In our view, sex

discrimination which was not in good faith is a personal injury, and the liquidated damages, even though measured by the back pay due, are nevertheless paid as damages for a personal injury. The Court, in the sex discrimination case, stated, as we have pointed out in our findings, that the liquidated damages were compensatory rather than penal in nature and were intended to compensate for intangible losses difficult to measure, but nevertheless the consequence of unfair wages. The Court further pointed out that the liquidated damages may be remitted if the employer can show good faith in the action. This is a further indication that the liquidated damages are intended as compensation for the sex discrimination which is a personal injury. Other than being measured by the amount of back pay, these liquidated damages are not directly related to back pay.

Respondent argues that the liquidated damages are in the nature of interest on the back pay, but there is nothing in the statute or the record to support this argument. The amount is not geared to the number of years the back wages owed have been outstanding, but rather is by statute placed as an amount equal to the back pay. On the record in this case, we conclude that the $66,135.27 amount of liquidated damages awarded to petitioner was damages awarded because she was discriminated against on the basis of sex. Therefore, this award is damages for personal injuries excludable from petitioner's income under section 104(a)(2).

*Decision of no deficiency and no overpayment will be entered.*