T.C. Memo. 1997-412


UNITED STATES TAX COURT


DARRELL D. AND JANE E. MORAN, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 5374-96.                    Filed September 17, 1997.


Darrell D. and Jane E. Moran, pro sese.

<u>James Gehres</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

GERBER, <u>Judge</u>:  Respondent, by means of a notice mailed February 16, 1996, determined an $11,701 income tax deficiency for petitioners' 1994 taxable year.  The sole issue for our consideration is whether the amount of $37,840 received by Darrell D. Moran[1] (petitioner) as the result of the termination

---

[1] Jane E. Moran is a petitioner solely because she filed a
                                        (continued...)

of his employment relationship with Holnam, Inc., is excludable under section 104(a)(2)[2] as damages received on account of personal injury or sickness.[3]

FINDINGS OF FACT

Petitioners resided in Cheyenne, Wyoming, at the time their petition was filed. In 1975, petitioner, who had obtained a college degree in engineering, began employment with Ideal Cement Industries. Holnam, Inc. (Holnam), became the successor to Ideal Cement Industries. In 1985, petitioner was selected to go to Montana to manage a plant that had not performed well. By 1990, the plant's performance had improved. As of 1993, petitioner had been promoted to regional sales manager for Montana, and his office was located in Bozeman, Montana. During 1993, Holnam announced a reorganization of the sales portion of its organization, and petitioner's position was to be eliminated. Although the Bozeman office was to remain open and a position higher than petitioner's was to continue, the higher level position in Bozeman was offered to a Holnam employee from

[1](...continued)
joint return with Darrell D. Moran, who will be referred to as petitioner in this opinion.

[2] Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the period under consideration, and all Rule references are to this Court's Rules of Practice and Procedure.

[3] Two other adjustments were set forth in the notice of deficiency, both of which were computational and dependent on the outcome of the question of excludability of the $37,840 amount.

Seattle, Washington.  From petitioner's point of view, the higher level position in Bozeman was petitioner's old position with a new title.  Petitioner was offered the alternative of a position in Seattle or a sales position in Montana, and the acceptance of either position would require the relocation of petitioner's family.  The positions offered to petitioner would not have been considered promotions.

Petitioner had little warning preceding these events, and he was profoundly affected by them.  When petitioner was advised that he was not going to be offered the new position in Bozeman, he asked for an explanation, but no explanation was provided, further upsetting petitioner.  Petitioner had heard that other employees had been offered "attractive buy-outs".

Petitioner sought severance pay from Holnam under its policy and procedure manual, but he was refused on the grounds that severance pay was only available for involuntary separations.  Thereafter, petitioner was offered a choice between a severance package or continuing in a particular job position, but he could not come to terms with company representatives.  Petitioner would have been satisfied with a reasonable severance package, but the company representatives did not provide what he regarded as reasonable alternatives.  Subsequently, petitioner hired Michael J. San Souci, an attorney, to seek redress from Holnam.  Attorney San Souci sent a nine-page letter, dated October 29, 1993, to Alex Pappas, vice president of Holnam's Human Resource

Department.  Attorney San Souci explained that he had been hired to review Holnam's proposed separation agreement with petitioner, and he also pointed out that petitioner and his wife had suffered due to Holnam's actions.  After setting forth the background, beginning on page five of the letter, attorney San Souci outlined the "Potential Liability Issues", which fell into the following four categories:  Holnam's conduct toward petitioner may be deemed (1) the "cause-in-fact" for a constructive discharge; (2) a breach of express or implied promises of Holnam not to reprimand, discipline, or discharge him, absent good or just cause based on the parties' long-term employment relationship; (3) a breach of a covenant of good faith and fair dealing based on Holnam's supervisors' treatment of petitioner; and (4) a violation of section 703(a)(1), title VII of the Civil Rights Act of 1964 due to discrimination with respect to petitioner (petitioner is part Native American).  Attorney San Souci's letter concluded with settlement proposals covering severance pay and compensation; accrued unpaid vacation pay, bonuses, and expenses; continuation and conversion of medical, dental, life, and disability insurance; 401(k) savings plan, pension, and stock purchase plans; favorable future recommendations and recovery of legal fees.

A settlement agreement was reached between petitioner and Holnam on November 15, 1993, under which petitioner was to receive $5,336 per month for 4 months beginning after his

resignation from Holnam and a $24,500 lump-sum payment on March 14, 1994. In addition, Holnam agreed to provide petitioner with medical and dental coverage through March 30, 1994. In exchange, petitioner agreed, among other things, to release Holnam from the following pertinent claims: (1) Any claim that petitioner was wrongfully forced to resign; (2) all claims for breach of employment agreement; (3) any claim under "Wrongful Discharge For Employment Act, Sec. 39-2-901 et seq."; (4) any claim for discrimination under title VII of the Civil Rights Act of 1964 or the Montana Human Rights Act; (5) all claims for improper separation that could have been brought under any local, State, or Federal administrative agency jurisdiction; (6) all claims for mental and/or physical injury, damages to or loss of personal reputation, libel, slander, or defamation of character, intentional infliction of emotional stress, or violation of civil or constitutional rights; (7) any claim concerning interference with any contractual relationship; and (8) any claim for salary, fringe benefits, costs, expenses or attorney's fees.

Petitioner received $37,840 under the settlement agreement during the taxable year 1994, which Holnam reflected as wages or income to petitioner in the 1994, Form W-2 that Holnam supplied to petitioner. Holnam withheld income and employment tax from the amount paid under the settlement agreement. Petitioner, on line 21 of page 1 of his Form 1040 (U.S. Individual Income Tax Return), deducted $37,714, and in a schedule attached to the

return explained that the amount was "excludable under Rev. Rul. 93-88 and code section 104(a)(2) as compensatory damages received through settlement agreement in lieu of prosecution based upon tort type rights and racial discrimination claims for disparate treatment under Title VII."  Respondent disallowed the $37,714 deduction claimed by petitioner.

OPINION

Except as otherwise provided, gross income includes income from all sources.  Sec. 61(a); Commissioner v. Glenshaw Glass Co., 348 U.S. 426 (1955).  Section 61(a), concerning inclusion of income, has been broadly construed, and statutory exclusions from income have been narrowly construed.  Commissioner v. Schleier, 515 U.S. 323, 327-328 (1995); Kovacs v. Commissioner, 100 T.C. 124, 128 (1993), affd. without published opinion 25 F.3d 1048 (6th Cir. 1994).

Under section 104(a)(2), gross income does not include "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness".  Section 1.104-1(c), Income Tax Regs., in pertinent part, provides that

> The term "damages received (whether by suit or agreement)" means an amount received * * * through prosecution of a legal suit or action based upon tort or tort type rights, or through a settlement agreement entered into in lieu of such prosecution.

Thus, an amount may be excluded from gross income only when it was received both:  (1) Through prosecution or settlement of

an action based upon tort or tort type rights; and (2) on account of personal injuries or sickness. Commissioner v. Schleier, supra; Wesson v. United States, 48 F.3d 894, 901-902 (5th Cir. 1995); Bagley v. Commissioner, 105 T.C. 396, 416 (1995), affd. __ F.3d __ (8th Cir., Aug. 6, 1997).

When damages are received pursuant to a settlement agreement, the nature of the claim that was the actual basis for settlement controls whether such damages are excludable under section 104(a)(2). United States v. Burke, 504 U.S. 229, 237 (1992); Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Robinson v. Commissioner, 102 T.C. 116, 126 (1994), affd. in part, revd. in part and remanded 70 F.3d 34 (5th Cir. 1995). "[T]he critical question is, in lieu of what was the settlement amount paid?" Bagley v. Commissioner, supra at 406.

Determination of the nature of the claim is factual. Id.; Stocks v. Commissioner, 98 T.C. 1, 11 (1992). The first requirement is the existence of a claim based upon tort or tort type rights. Commissioner v. Schleier, supra at 337. The claim must be bona fide, but not necessarily valid; i.e., sustainable. Taggi v. United States, 35 F.3d 93, 96 (2d Cir. 1994); Robinson v. Commissioner, supra at 126; Stocks v. Commissioner, supra at 10.

Petitioner here was a long-term employee (almost 20 years) of a business enterprise. During that employment, he progressed

through a series of more responsible positions from sales representative to sales manager in Bozeman, Montana. A restructuring of the company caused the elimination of the layer of management where petitioner's position was situated, and he was offered positions in the layer below the one eliminated. Both of the positions offered would have been in locations other than the one in which petitioner and his family had settled. The position in the surviving layer of the company, just above the one that was eliminated, which was located in Bozeman, Montana, was offered to a person other than petitioner.

Initially, petitioner applied for severance pay, but was turned down because the company's policy was to only permit severance pay for employees who were "involuntarily separated" due to a "reduction in force". After he was turned down for severance pay, petitioner engaged an attorney who approached the company with various claims that he thought petitioner could assert against the company due to his circumstances. Those claims generally included various breaches of contractual type rights, wrongful discharge, and violation of civil rights. The parties' settlement agreement does not delineate or allocate the amounts which are attributable to the various claims made by petitioner. Although no specific amount is allocated to any particular claim, petitioner released the company from possible claims sounding in both contract and tort, including discrimination under title VII of the Civil Rights Act of 1964 or

the Montana Human Rights Act and all claims for mental and/or physical injury, damages to or loss of personal reputation, libel, slander, or defamation of character, intentional infliction of distress or violation of civil or constitutional rights. It is accordingly difficult to differentiate the actual basis for settlement. Similarly, we are unable to discern from the method of payment whether any portion was designated or intended to be allocable to any one of petitioner's claims.

The settlement agreement between petitioner and the company does not specifically indicate that the four monthly payments or the lump-sum payment received by petitioner were paid to settle a potential personal injury claim against the employer/company. Where a settlement agreement lacks express language stating what the settlement amount was paid to settle, then the most important factor is the intent of the payor. Knuckles v. Commissioner, 349 F.2d 610, 612 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Church v. Commissioner, 80 T.C. 1104, 1107 (1983).

In that regard the evidence in this case does not present a predicate for finding that petitioner's former employer made an identifiable portion of the payments to settle a claim in tort or on account of a personal injury. The payments here appear to be more in the nature of taxable severance pay rather than a payment for personal injury. Petitioner was profoundly affected by the actions of the company, but there has been no showing of any

specific tort or personal injury.  Although petitioner is part Native American, there is no indication that he was discriminated against or that damages were paid under the settlement due to that fact.  Other than the distress caused by the unsettling circumstances surrounding the company's restructuring and the elimination of petitioner's position, there is no indication of a personal injury.  Nor is there a sufficient basis in the record for allocating any portion of the settlement to such an injury.

The settlement agreement indicates that petitioner "wishes to voluntarily terminate his employment with HOLNAM  * * * [and that] HOLNAM is willing to offer * * * [petitioner] certain compensation and benefits as assistance, some of which * * * [petitioner] would not be entitled to receive except by reason of this Separation Agreement and Release."  Further, the agreement designates the payments in question as "severance pay" and the company treated them as such, withholding income and employment tax from the payments made to petitioner.

Under these circumstances, the payments received by petitioner are not excludable from his gross income under section 104(a)(2).

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>