T.C. Memo. 2002-134


UNITED STATES TAX COURT


SAM ERVIN AND ELLA M. ERVIN, ET AL.,[1] Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 22079-97, 22080-97,      Filed May 30, 2002.
            22081-97.


<u>Thomas P. Ollinger, Jr.</u>, for petitioners.

<u>Charles Pillitteri</u> and <u>Alan Friday</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


COLVIN, <u>Judge</u>:  Respondent determined that petitioners are

liable for deficiencies in Federal income tax for 1994 as

follows:

_____

[1]  The following cases were consolidated for trial,
briefing, and opinion:  Alfred Hudson, docket No. 22080-97; and
Hawthorne Echols and Vivian H. Echols, docket No. 22081-97.

| Petitioners | Deficiency |
|---|---|
| Sam and Ella M. Ervin | $97,982 |
| Alfred Hudson | 97,440 |
| Hawthorne and Vivian H. Echols | 95,597 |

In February 1994, United Insurance Company of America (United) made payments to petitioners Ella M. Ervin (Ervin), Alfred Hudson (Hudson), and Vivian H. Echols (Echols) to settle a lawsuit relating to the purchase of health insurance from United by Ervin, Hudson, and Echols. Ervin, Hudson, and Echols are siblings. After concessions,[2] the sole issue for decision is whether petitioners may exclude those payments from gross income under section 104(a)(2) as damages for personal injuries or sickness. We hold that they may not.

Section references are to the Internal Revenue Code as amended and in effect for the year in issue, and Rule references are to the Tax Court Rules of Practice and Procedure. References to petitioners are to Ervin, Hudson, and Echols.

---

[2] Respondent conceded that petitioners may deduct their attorney's fees and related legal expenses from their gross settlement proceeds to derive the taxable amounts of the settlement proceeds.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A.  Petitioners

1.  Ella M. Ervin and Sam Ervin

Ervin and her husband, Sam Ervin, resided in Mobile, Alabama, when they filed their petition.

Lee Padgett (Padgett) was United's agent who sold a health insurance policy to Ervin for her daughter.  Ervin told Padgett that Ervin's daughter had lupus.  Padgett told Ervin that her daughter's condition would not preclude coverage.  United later denied medical claims that Ervin filed for her daughter on the grounds that her daughter had lupus before Ervin bought the insurance.  Ervin and her husband filed a joint Federal income tax return for 1994.

2.  Alfred Hudson

Hudson, a truck driver, resided in Eight Mile, Alabama, when he filed his petition.  He bought hospitalization insurance from United through Padgett.  He had surgery and incurred medical bills totaling about $6,000.  United did not pay any of those bills.  Hudson subsequently filed for bankruptcy protection. Hudson did not file a 1994 Federal income tax return.

3.  Hawthorne Echols and Vivian H. Echols

Echols and Hawthorne Echols were married and resided in Mobile, Alabama, when they filed their petition.  She bought life insurance and medical insurance from United through Padgett

because Padgett told her that it would cover the medical costs that she would incur in having a child.  However, United did not pay those costs.  Echols and her husband filed a joint Federal income tax return for 1994.

B.   The Lawsuits

In August 1993, Ervin, Hudson, and Echols (the plaintiffs) each filed a lawsuit in the Circuit Court of Mobile County, Alabama, against United and Padgett.  Each complaint related to medical, hospitalization, or life insurance policies purchased by the plaintiffs from United through Padgett.

The plaintiffs sought an unspecified amount for punitive and compensatory damages.  They alleged:  (1) United overcharged them for the insurance coverage; (2) Padgett forged their names to additional insurance applications; (3) United did not pay the plaintiffs' insurance claims; and (4) Padgett and United wrongfully conspired against them.  The plaintiffs did not claim that United or its agents caused them to have any personal injuries or sickness.

C.   The Settlements

Petitioners were represented by counsel during the settlement negotiations.  United was represented by Kirk Cordell Shaw (Shaw).  On February 10, 1994, petitioners each settled their cases with United for $333,333.33.  Clisby Jarrard (Jarrard), a United vice president, approved the settlements.  The settlement agreements are substantially similar.  They state

in pertinent part:

> I fully understand that when I sign this Receipt and Release I will have surrendered and released all rights and claims which I now have, both known and unknown, against * * * United * * *; including, but not limited to, claims for past, present, and future damages, indemnity, costs, attorneys fees, interest of all types, and damages of every other kind by whatever named called.

> &ast; &ast; &ast; &ast; &ast; &ast; &ast;

> For the same consideration recited herein above, I and my attorneys * * * agree that every aspect of this settlement shall remain confidential in every respect * * *.

> For the same consideration recited herein above, I and my attorneys * * * agree that they will surrender every document of every type that has been produced to them or their clients by United * * * in any case * * *.

> For the same consideration recited herein, attorneys * * * hereby warrant that they have not heretofore and will not in the future transmit or convey in any manner the documents described in the preceding paragraphs to any third parties of any type. * * * Said attorneys further warrant that they have not and will not in the future refer current or former policyholders of United * * * to any third parties for possible prosecution of any purported claims.

The last paragraph of the settlement agreements states:

> I hereby acknowledge that all settlement amounts received are for damages that are compensatory in nature and that no payment was or will ever be paid to me for alleged punitive damages arising out of any claims which I asserted or could have asserted in this matter.

In February 1994, petitioners gave their attorneys all of their documents related to their claims against United.  All of those documents were then shredded.  Petitioners and their

attorneys signed the settlement agreements. Later in February 1994, Ervin and Hudson each received net settlement proceeds of $166,573.10, and Echols received net settlement proceeds of $166,556.60. Ervin and Echols did not report the settlement proceeds on their 1994 Federal income tax returns, and Hudson did not file a 1994 return.

Respondent determined that Ervin and Hudson had unreported income of $333,333, and Echols had unreported income of $332,991 in 1994.

OPINION

A.  Contentions of the Parties and Background

Petitioners contend that the amounts that they received from United in 1994 are excludable from gross income as compensation for personal injuries or sickness under section 104(a)(2).[3] Petitioners contend that they suffered personal injuries due to United's conduct and that the settlement amounts were intended to compensate them for those injuries. Respondent contends that

---

[3]  Sec. 104(a)(2) provides:

SEC. 104(a). In General.--Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include--

*      *      *      *      *      *      *

(2) the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness; * * *

petitioners may not exclude the United payments from income under section 104(a)(2) because petitioners have not shown that the United payments were on account of personal injuries or sickness. Petitioners bear the burden of proving that they may exclude the United payments from income under section 104(a)(2).[4] Rule 142(a)(1). We agree with respondent for reasons discussed next.

Gross income does not include the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness. Sec. 104(a)(2). Damages on account of personal injuries include payments intended to compensate for pain and suffering, lost wages recovered by an individual who cannot work due to personal injuries, medical expenses, and other consequential damages. Commissioner v. Schleier, 515 U.S. 323, 329 (1995).

To decide whether payments were for personal injuries or sickness, courts have considered, inter alia, the following: (1) The underlying complaint and the nature of the claims; (2) the settlement negotiations and settlement agreement; and (3) the intent of the payor. See United States v. Burke, 504 U.S. 229, 239 (1992); Thompson v. Commissioner, 866 F.2d 709, 711 (4th Cir. 1989), affg. 89 T.C. 632 (1987); Knuckles v. Commissioner, 349

---

[4] Sec. 7491 applies to court proceedings arising in connection with examinations commencing after July 22, 1998. Respondent issued the notices of deficiency in 1997. Thus, petitioners bear the burden of proof. Rule 142(a)(1).

F.2d 610, 612-613 (10th Cir. 1965), affg. T.C. Memo. 1964-33; Agar v. Commissioner, 290 F.2d 283, 284 (2d Cir. 1961), affg. per curiam T.C. Memo. 1960-21; Bagley v. Commissioner, 105 T.C. 396, 406 (1995), affd. 121 F.3d 393 (8th Cir. 1997).

B.    Underlying Complaints and Nature of the Claim

Petitioners contend that the underlying complaints and nature of their claims were for relief from personal injuries. We disagree.

In the complaints, petitioners sought an unspecified amount of punitive and compensatory damages, but they requested no relief for personal injuries or sickness. Petitioners' four causes of action related to petitioners' purchase of the United insurance policies and United's denial of petitioners' claims for benefits under those policies. Petitioners' claims are in the nature of breach of contract, see Gray v. Reynolds, 553 So. 2d 79, 82 (Ala. 1989) (breach of contract occurs when a party to a contract fails to do a particular thing that he or she promised to do); Seybold v. Magnolia Land Co., 376 So. 2d 1083, 1085 (Ala. 1979) (same); 17A Am. Jur. 2d, Contracts, sec. 441 (1991), not in terms which indicate that they sought relief for personal injuries or sickness. Neither petitioners' complaints nor the nature of their claims support their contention that United's payments to them were on account of personal injuries or sickness.

C.   Settlement Negotiations and Settlement Agreements

Petitioners contend that the settlement included payments for emotional distress, and that Shaw considered emotional distress in drafting the agreements for United.  They point out that the settlement agreements included a release of "damages of every other kind by whatever name called".  Petitioners contend that this language shows that United paid them on account of emotional distress.  We disagree.  Jarrard and Shaw represented United at the settlement conference.  Jarrard testified that the parties did not discuss emotional distress during the settlement discussions.  Shaw testified that he did not remember considering emotional distress in settling petitioners' cases.  There is no evidence that the parties discussed personal injuries or sickness in their settlement negotiations.

Petitioners contend that the settlement agreements establish that United paid them on account of personal injuries or sickness.  We disagree; the settlement agreements do not refer to personal injuries or sickness.

Petitioners contend that the last paragraph of the settlement agreements shows that United paid them on account of personal injuries or sickness because it states that the payments were compensatory in nature.  We disagree.  Generally, "compensatory damages" are the same as "actual damages" and encompass all types of damages other than punitive damages. Fountain-Lowrey Entrs, Inc. v. Williams, 424 So. 2d 581, 585 (Ala. 1982); Skipper v. S. Cent. Bell Tel. Co., 334 So. 2d 863,

866 (Ala. 1976); 22 Am. Jur. 2d, Damages, sec. 23 (1988); 25 C.J.S., Damages, sec. 2 (1966).  A plaintiff may be awarded compensatory damages for claims of breach of contract, conversion, conspiracy, or fraudulent inducement.  See, e.g., Estate of Henderson v. Henderson, 804 So. 2d 191, 192 (Ala. 2001); Old Republic Ins. Co. v. Lanier, 790 So. 2d 922, 927 (Ala. 2000); Williams v. Williams, 786 So. 2d 477, 479 (Ala. 2000). Those claims do not necessarily include claims on account of personal injuries or sickness, and did not do so here.  Thus, use of the term "compensatory damages" does not prove that the United payments to petitioners were on account of personal injuries or sickness.

Thus, neither the settlement negotiations nor the settlement agreement proves that United intended to compensate Ervin, Hudson, or Echols for personal injuries or sickness.

D.    United's Intent

Shaw and Jarrard represented United at the settlement conference and testified about the settlement agreements. Petitioners contend that their testimony about United's intent is inadmissible parol evidence because the reference in the last paragraph of the settlement agreement to compensatory damages is unambiguous and dispositive.  We disagree because, as discussed in paragraph C, above, the term "compensatory damages" in the last paragraph is not synonymous with "on account of personal injuries or sickness".  However, even if we did not consider the testimony of Jarrard and Shaw, our analysis would be unchanged

because there is no evidence that United intended to compensate petitioners for personal injuries or sickness.

E.   Petitioners' Injuries

Petitioners testified that they suffered sleep loss, damaged credit, and anxiety from United's failure to pay their insurance claims.  However, this does not establish that United intended to pay damages on account of petitioners' personal injuries or sickness.

Petitioners contend that Hudson's loss of credit is a personal injury for purposes of section 104(a)(2) similar to the injury to the taxpayer's business reputation in Threlkeld v. Commissioner, 87 T.C. 1294 (1986), affd. 848 F.2d 81 (6th Cir. 1988).  We disagree.  Regardless of the treatment of injury to business reputation by courts in other cases, there is no evidence that Hudson made that a part of his claim against United or that United intended any part of the settlement to compensate him for damages to his business reputation.

F.   Conclusion

We conclude that the United payments to petitioners in 1994 were not on account of personal injuries or sickness.  Thus,

pursuant to respondent's concession (see n.2 above), Ervin, Hudson, and Echols must include in income in 1994 the United payments less attorney's fees and related legal expenses.

To reflect the foregoing,

<u>Decisions will be</u>

<u>entered under Rule 155</u>.