FRANK E. AND MILDRED E. RICKEL, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 22936-87          Filed March 23, 1989.

*Dixon R. Rich, Ted Tishman,* and *Dixon R. Rich, Jr.,* for the petitioners.

*Julia L. Wahl* and *Edward F. Peduzzi,* for the respondent.

COHEN, *Judge:* Respondent determined deficiencies in petitioners' Federal income tax liability and additions to tax for 1983 and 1984 as follows:

| | | Additions to tax | | |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6653(a)(1) [1] | Sec. 6653(a)(2) | Sec. 6661(a) |
| 1983 | $26,551.56 | $1,327.57 | * | $6,637.89 |
| 1984 | 4,711.00 | 235.55 | ** | - - - |

*50 percent of the interest due on $26,551.56
**50 percent of the interest due on $4,711.00

[1] All section references are to the Internal Revenue Code as amended and in effect for the years in issue, except as otherwise noted.

Respondent has now conceded that petitioners are not liable for additions to tax under section 6653(a). The issues remaining for decision are:

(1) Whether all or any portion of $80,000 and $25,000 payments petitioner received in 1983 and 1984, respectively, in settlement of a suit under the Age Discrimination in Employment Act, 29 U.S.C. secs. 621-634 (1985), are includable in gross income;

(2) whether petitioners are entitled to deduct all of the legal fees paid in relation to that suit if a portion of the settlement payments are excludable; and

(3) whether petitioners are liable for an addition to tax under section 6661(a) for 1983.

The parties have stipulated that if the $80,000 payment is includable in petitioners' 1983 gross income, petitioners are entitled to deduct as an itemized deduction $30,000 in legal fees paid in that year.

The parties have also stipulated that if the $80,000 payment or the $25,000 payment is includable in gross income, petitioners are entitled to use the income-averaging method of calculating any tax deficiency for 1983 and 1984.

### FINDINGS OF FACT

Some of the facts have been stipulated, and the facts set forth in the stipulations are incorporated in our findings by this reference. Petitioners Frank E. and Mildred E. Rickel were residents of Pittsburgh, Pennsylvania, at the time they filed their petition.

Beginning in June 1976, petitioner Frank E. Rickel (petitioner) was employed by Malsbary Manufacturing Co. (Malsbary), Uniontown, Pennsylvania, as general sales manager. Petitioner was an employee at will and worked without an employment contract. Malsbary, a subsidiary of Carlisle Corp. (Carlisle), manufactured industrial cleaning equipment. In an interview prior to his employment, petitioner was told by the president of Malsbary, Frank Smith (Smith), and by the president of Carlisle, Malcolm Myers (Myers), that he would be considered for the presidency of Malsbary when the position became available.

During the term of petitioner's employment, Malsbary prospered and in 1978 realized a record year both in sales

and profits. After Malsbary terminated petitioner's employment on August 15, 1979, the company's profits began to decrease. Malsbary went out of business in 1986.

In March 1979, when the position of president became available at Malsbary, petitioner was 59 years old. Despite petitioner's qualifications, Malsbary hired a 42-year-old individual as corporate president. Subsequently, the new Malsbary president told petitioner that he was not given the position as president because Myers wanted someone younger. The new Malsbary president also informed petitioner that he wanted a younger person as general sales manager. Petitioner was relieved of his duties as general sales manager, placed on partial pay, and ultimately discharged on December 31, 1979. Malsbary hired a 37-year-old individual as general sales manager.

During the period of his employment at Malsbary, petitioner received the following compensation for his services:

| Year | Base salary | Bonus |
|------|-------------|-------|
| 1977 | $30,000 | $5,250 |
| 1978 | 33,000 | - - - |
| 1979 | 24,000 | 8,500 |

Petitioner also received $6,000 in termination pay for the period September through December 1979.

By letter dated August 25, 1980, the Equal Employment Opportunity Commission advised petitioner of his right to institute legal action against Malsbary for age discrimination. On November 18, 1981, petitioner filed an amended complaint in the United States District Court for the Western District of Pennsylvania. Petitioner's suit, under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. sec. 621 et seq. (1985), and the Fair Labor Standards Act (FLSA), 29 U.S.C. sec. 201 et seq. (1982), was against his former employer Malsbary and its parent corporation Carlisle. Petitioner's amended complaint included various prayers for relief, as follows:

A. Order defendants jointly and/or severally to employ the plaintiff as President of Malsbary; or in the alternative to reinstate plaintiff to his former or a comparable position;

B. Order the defendants jointly and/or severally to pay back wages, benefits and other compensations found by the Court to be due plaintiff,

together with interest thereon from the date when such amount became due;

C. Grant a judgment requiring defendants jointlyand/or severally to pay appropriate back wages and an equal sum as liquidated damages, to plaintiff who has been adversely affected by the unlawful employment practices described herein;

D. Award counsel for plaintiff reasonable attorney's fees and expenses;

E. Award any further relief which is appropriate and proper under the circumstances.

In January 1983, petitioner's suit was tried before a jury. Judge Maurice B. Cohill, Jr. (Judge Cohill) presided at the bifurcated trial. The jury was to make an initial determination on liability. Assuming the jury returned a verdict favorable to petitioner on liability, they would then decide the issue of damages.

Four special interrogatories were submitted to the jury, as follows:

(1) Was plaintiff, Frank E. Rickel, qualified in April 1979 for the position of President of Malsbary Manufacturing Co.?

(2) Was age a determinative factor in the decision not to promote the plaintiff?

(3) Was plaintiff, Frank E. Rickel, qualified in August 1979 for the position of General Sales Manager of Malsbary Manufacturing Co.? [and]

(4) Was age a determinative factor in the decision to discharge the plaintiff from his job as General Sales Manager?

While the jury was deliberating its answers to these interrogatories, counsel for the plaintiff and counsel for the defendant informed Judge Cohill that a settlement had been reached. Subsequently during a settlement conference in Judge Cohill's chambers, the parties entered into a stipulation to settle and discontinue. The terms of the settlement, which dismissed petitioner's lawsuit with prejudice, depended on how the jury answered the four special interrogatories.

Under the terms of the settlement, if the jury answered "yes" to all four interrogatories, Malsbary and its parent Carlisle would pay petitioner $80,000 immediately and $25,000 each year for the next four years. The $180,000 gross settlement amount was not allocated among the various damage claims asserted in petitioner's amended complaint. The jury answered all four interrogatories affirmatively.

Carlisle made the first payment of $80,000 to petitioner's attorney in 1983. The attorney withheld $30,000 as his fee and remitted $50,000 to petitioner. During the succeeding 4 years, Carlisle made annual payments of $25,000 to petitioner's attorney, who remitted the payments in full to petitioner.

Petitioner's attorney received remittance advices with each of the payments from Carlisle, as follows:

| Date | Remittance Advice |
|---|---|
| 1/13/83 | Legal and Professional/Damages |
| 1/03/84 | Settlement Jan. 11, 1983 |
| 1/07/85 | 1985 Litigation settlement payment |
| 1/07/86 | 1/11/86 Litigation settlement payment |
| 12/31/86 | 1/11/87 Litigation settlement payment final installment |

Carlisle filed Form 1099-Miscellaneous Income for each settlement payment, entering the appropriate dollar amount in the box entitled "Nonemployee compensation." Carlisle did not withhold Federal income taxes or Social Security taxes from any of the litigation settlement payments.

Petitioner prepared his own Federal income tax returns for 1983 and 1984. Prior to preparing his 1983 tax return, petitioner questioned Carlisle about the form that it had used to report the initial settlement payment. Carlisle responded that:

Our tax department has looked at this issue and have concluded that if the payments made to you are considered "liquidated damages" instead of a back pay award (the latter subject to withholding and FICA taxes) the income to the payee as liquidated damages is reportable on Form 1099 by the payor. If, however, you feel wages are more appropriate, we will be glad to change our treatment of future payments to you and withhold income and FICA taxes.

The method of our reporting these payments to you does not necessarily determine the taxability of these payments to you. It is important for you and your tax advisor to determine the taxable consequences of such a payment to you and any corresponding deductible expenses if any when you file your tax returns. As you know, as a manufacturing corporation we cannot offer any individual tax advice.

In addition to his correspondence with Carlisle, petitioner also referred to Internal Revenue Service Publication 17, Your Federal Income Tax (Rev. Oct. 83), to determine

whether the settlement payments were taxable. Chapter 13 of that publication discussed "Other Income," as follows:

*Damages.* Do not include in income any compensation you receive for damage to your character or for personal injury and illness. Damages for personal injury and illness are not income regardless of whether you receive a lump-sum award or installments. Include in income any punitive damages and compensation you receive for lost wages or lost profits. Interest on an award must be included in income.

Petitioners did not include the $80,000 settlement payment received in 1983 in their reported 1983 gross income, and they did not disclose the unreported income on their 1983 tax return. Likewise, petitioners did not include the $25,000 settlement payment received in 1984, in their reported 1984 gross income.

In statutory notices of deficiency, respondent determined that petitioners had additional taxable income of $80,000 and $25,000 for 1983 and 1984, respectively, consisting of the litigation settlement payments received from Carlisle.

## OPINION

Respondent contends that the $80,000 and $25,000 payments received in 1983 and 1984, respectively, are includable in gross income because the payments are in the nature of damages for breach of contract. Petitioners maintain that the payments were in settlement of an age discrimination claim for wrongful discharge, and as such were in settlement of a tort or tort-type injury for purposes of section 104(a)(2). Thus, petitioners contend the entire settlement payments are excludable from gross income.

### I. *Litigation Settlement Payments*

Section 61 includes in gross income "all income from whatever source derived" unless otherwise provided. Section 104(a)(2), however, excludes from gross income "the amount of any damages received (whether by suit or agreement and whether as lump sums or as periodic payments) on account of personal injuries or sickness."

Section 1.104-1(c), Income Tax Regs., provides that "The term 'damages received (whether by suit or agreement)' means an amount received (other than workmen's compen-

sation) through prosecution of a legal suit or action based upon tort or tort-type rights, or through a settlement agreement entered into in lieu of such prosecution."

The determination of whether a litigation settlement payment is exempt from taxation depends on the nature of the claim settled and not on the validity of the claim. *Byrne v. Commissioner,* 90 T.C. 1000 (1988); *Metzger v. Commissioner,* 88 T.C. 834, 847 (1987), affd. without published opinion 845 F.2d 1013 (3d Cir. 1988); *Threlkeld v. Commissioner,* 87 T.C. 1294, 1297 (1986), affd. 848 F.2d 81 (6th Cir. 1988); *Bent v. Commissioner,* 87 T.C. 236, 244 (1986), affd. 835 F.2d 67 (3d Cir. 1987). This determination is a factual one, and petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a), Tax Court Rules of Practice and Procedure.

To determine whether the damages received were paid on account of personal injuries excludable under section 104(a)(2), we must look to the nature of the claim and not to the consequences that result from the injury. *Threlkeld v. Commissioner,* 87 T.C. at 1299. In the absence of an express personal injury settlement agreement, an important fact for purposes of making the section 104(a)(2) determination is "the intent of the payor" as to the purpose in making the payment. *Metzger v. Commissioner,* 88 T.C. at 847-848; *Knuckles v. Commissioner,* 349 F.2d 610, 613 (10th Cir. 1965), affg. a Memorandum Opinion of this Court.[2]

Similarly, in the context of a suit, if the trier of fact does not indicate the basis on which an award was made, it is necessary to examine the allegations contained in the taxpayer's complaint, the evidence presented, and the arguments made in the earlier court proceeding to ascertain the true nature of the damages. *Metzger v. Commissioner,* 88 T.C. at 848; *Threlkeld v. Commissioner,* 87 T.C. at 1306; *Bent v. Commissioner,* 87 T.C. at 245; *Church v. Commissioner,* 80 T.C. 1104, 1107 (1983).

In his suit, petitioner complained that Carlisle and Malsbary were guilty of unlawful employment practices in violation of the provisions of the Age Discrimination in Employment Act and the Fair Labor Standards Act, as follows:

---

[2]*Knuckles v. Commissioner,* T.C. Memo. 1964-33.

(1) by denying him the opportunity to apply for the position of president of Malsbary because of his age,

(2) by hiring a younger and less qualified individual for that position,

(3) by discharging him from his position as general sales manager because of his age, and

(4) by hiring a younger employee to replace him.

Petitioner's amended complaint sought employment as president of Malsbary or reinstatement to his former position, along with back wages and an equal sum as liquidated damages.

The Equal Employment Opportunity Commission advised petitioner of his right to institute an action, and his suit was pending at the time petitioner, Malsbary, and Carlisle agreed on the settlement. The stipulation to settle and discontinue litigation that petitioner signed did not allocate any part of the settlement payment and merely recited that petitioner was waiving all aspects of the damage claim, including willfulness.

*The Age Discrimination in Employment Act*

The Age Discrimination in Employment Act of 1967 (ADEA), 81 Stat. 602, as amended, 29 U.S.C. section 621 et seq., prohibits arbitrary discrimination in the workplace based on age. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111, 120 (1985). The preamble to the ADEA declares its purpose is "to promote employment of older persons based on their ability rather than age [and] to prohibit arbitrary age discrimination in employment." 29 U.S.C. sec. 621(b).

Section 4(a)(1) of the ADEA proscribes differential treatment of older workers "with respect to * * * compensation, terms, conditions, or privileges of employment." 29 U.S.C. sec. 623(a). This proscription presently applies to all persons between the ages of 40 and 70. 29 U.S.C. sec. 631(a). The substantive provisions of the ADEA are, with a few minor exceptions, identical in terms to those of Title VII of the Civil Rights Act of 1964, 42 U.S.C. sec. 2000(e) et seq. *Trans World Airlines, Inc. v. Thurston,* 469 U.S. at 121.

Section 7(b) of the ADEA, 81 Stat. 604, 29 U.S.C. section 626(b), provides that the rights created by the ADEA are to be "enforced in accordance with the powers, remedies, and procedures" of the Fair Labor Standards Act (FLSA). See 29

U.S.C. section 626(b), incorporating 29 U.S.C. sections 211(b), 216(b), 216(c), 217, 626(b), and 626(c). The remedial provisions of the two statutes, however, are not identical.

The FLSA permits aggrieved employees to recover "unpaid minimum wages" or "unpaid overtime compensation," as well as an equal amount of mandatory "liquidated damages" for employer violations of minimum wage and maximum hour laws. 29 U.S.C. sec. 216(b). Because violations of the ADEA do not typically involve an employer's failure to pay minimum or overtime wages, however, monetary damages for the discriminatory refusal to hire or promote an employee on the basis of age are likely to be less precisely measurable. *Rodriguez v. Taylor,* 569 F.2d 1231, 1237 (3d Cir. 1977).

Section 16(b) of the FLSA makes the award of liquidated damages mandatory, whereas section 7(b) of the ADEA provides that a prevailing plaintiff is entitled to double damages "only in cases of willful violations." 29 U.S.C. sec. 626(b). In addition, section 7(b) empowers the courts "to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section." 29 U.S.C. sec. 626(b).

The determinative inquiry here involves the characterization of the nature of petitioner's liquidated damages claim. Exclusion under section 104(a)(2) will be appropriate if damages are received to compensate for an invasion of individual rights. *Threlkeld v. Commissioner,* 87 T.C. at 1308. This court and others have consistently held that amounts received in lieu of wages, salary, or lost profits are includable in income. As discussed below, the liquidated damages here are measured by lost income. The issue, however, is whether they are in lieu of lost income or are compensation for a personal injury suffered by petitioner.

Although the characterization of petitioner's age discrimination claim is one of first impression in this Court, the situation in the instant case is analogous to the characterization of the claim in *Metzger v. Commissioner,* 88 T.C. at 851-852. *Metzger* involved a claim based on violations of the

taxpayer's Federal statutory rights under 42 U.S.C. section 1983 to be free from discrimination on the basis of sex and national origin, but that distinction does not alter our conclusion herein.

In *Metzger* we held that the violation of a person's rights to be free from discrimination on account of sex and national origin was a personal injury within the scope of section 104(a)(2). The taxpayer in *Metzger,* a college professor, alleged that the college denied her tenure and terminated her employment contract on account of her sex and national origin. In her State court suit, the taxpayer asserted a breach of contract claim, while in her Federal court suit she complained that the college officials had violated her constitutional rights under the 13th and 14th Amendments and her statutory rights under title VII of the Civil Rights Act of 1964.

The taxpayer and the college settled the litigation without the college's admitting liability. The settlement agreement designated half of the settlement as wages, and the taxpayer properly included that amount in gross income. Because we found that the other half of the settlement payment was to compensate the taxpayer for personal injuries, we held that not less than half of the payment was excludable from income under section 104(a)(2).

Similarly, in *Thompson v. Commissioner,* 89 T.C. 632, 649-650 (1987), affd. 866 F.2d 709 (1989), we found that liquidated damages awarded for a sex discrimination claim under the Equal Pay Act, 29 U.S.C. sec. 206(d), were excludable from income under section 104(a)(2) as damages received for personal injuries. In *Thompson,* the taxpayer was the lead plaintiff in a class action sex discrimination suit filed against the U.S. Government Printing Office. She was awarded back pay, as well as liquidated damages in an amount equal to the unpaid wages.

We held that the amount received by the taxpayer as back pay was not damages for a personal injury but rather was wages due for an action in the nature of breach of contract and, therefore, was not excludable from taxable income. We also held, however, that the liquidated damages award was in the nature of damages for a personal injury and, as such, was excludable from taxable income under

section 104(a)(2). Although the amount of the liquidated damages was measured by the wages due the taxpayer, we held that sex discrimination was a personal injury and the liquidated damages were, therefore, paid as damages for a personal injury.

Recently, in *Byrne v. Commissioner,* 90 T.C. at 1010-1011, we held that a taxpayer's settlement payment for wrongful discharge was allocable to a claim for a tort-like injury to the extent of 50 percent and allocable to other claims, predominantly of a contractual nature, to the extent of the remaining 50 percent. The taxpayer in *Byrne* was discharged by her employer because the company believed she had instigated and participated in an investigation by the Equal Employment Opportunity Commission into sex-based wage disparities at the company.

The range of claims settled by the broad terms of the release in *Byrne* included claims under the FLSA as well as potential State court actions. We found, therefore, that the claims settled contained elements of both tort and contract actions, and in the absence of more precise evidence in the record, also found that half the settlement was excludable as damages received on account of personal injuries and half was taxable.

Respondent argues that "the instant case cannot be distinguished from *Thompson* * * * in any meaningful way except for the tax treatment of liquidated damages." Respondent contends that actions under the ADEA are in the nature of a suit for breach of an employment contract and that the ADEA does not create a tort action. In support of this contention, respondent cites *Rogers v. Exxon Research & Engineering Co.,* 550 F.2d 834, 838 (3d Cir. 1977), where the Court of Appeals for the Third Circuit was considering whether plaintiffs in ADEA actions were entitled to jury trials, and found that "A suit for damages consisting of back wages arising out of the breach of an employment agreement is a routine contract action where the parties would be entitled to a jury under the Seventh Amendment."

Respondent, however, cites *Rogers* for the proposition that ADEA actions are contract rather than tort actions. The holding of that case neither establishes exclusivity of

the contract claim nor negates a tort remedy under the ADEA. Like the FLSA and the Equal Pay Act, the ADEA contains elements of both contract and tort claims. Specifically, while damages in lieu of wages are in the nature of a breach of contract action, liquidated damages are intended as compensation for a tort or tort-like injury.

Even if we conclude that a portion of petitioner's settlement payments are liquidated damages, respondent argues that those amounts are taxable as punitive damages. Depending on the nature of the claim, amounts awarded as punitive damages may be includable in gross income. *Commissioner v. Glenshaw Glass Co.,* 348 U.S. 426 (1955); sec. 1.61-14(a), Income Tax Regs. In support of the argument that liquidated damages should be taxable as punitive damages, respondent cites *Trans World Airlines, Inc. v. Thurston,* 469 U.S. at 125, where the Supreme Court noted that "the legislative history of the ADEA indicates that Congress intended for liquidated damages to be punitive in nature."

The *Trans World Airlines* case involved the interpretation of section 7(b) of the ADEA, that permits the award of liquidated damages to a prevailing plaintiff "only in cases of willful violations." 29 U.S.C. sec. 626(b). Monetary awards imposed on employers who practice prohibited discrimination, whether racially, sexually, or age motivated, serve two important functions. First, monetary awards may deter employers from engaging in prohibited employment practices. In that sense they are punitive in nature. The Supreme Court was deciding the extent to which the employer's culpability affected damages.

Second, monetary awards also recompense individuals for injuries caused by their employers' discriminatory conduct. *Thompson v. Commissioner,* 866 F.2d at ____. In this tax case, we are concerned with the nature of the award in the hands of the recipient, and from that standpoint it is compensatory.

The personal injuries resulting from discriminatory employment practices are more difficult to measure than are the wage-related losses that result from the same discriminatory practices. By specifying that compensatory damages be measured in relation to the wage-related damages, the

FLSA, the Equal Pay Act, and the ADEA have provided a certain, if somewhat imprecise, measure for those personal injuries resulting from employment discrimination. *Thompson v. Commissioner,* 866 F.2d at ____ .

We conclude, therefore, that the liquidated damages available under the ADEA are intended to compensate for those difficult to measure personal injuries that are the consequence of age discrimination. Thus, we hold that gross income does not include liquidated damages received under a 29 U.S.C. sec. 626 claim based on a violation of petitioner's statutory right to be free from discrimination on the basis of age.

Although petitioner's claim against his employer comprised both elements of wage-related damages and liquidated damages, the settling parties did not allocate the payments between the types of claims. Because the law equates the amounts recoverable for the two types of claims, it is logical to infer that 50 percent of the amounts paid were liquidated damages for the personal injury suffered by petitioner. 50 percent of the payments he received in 1983 and 1984 may be excluded from his gross income for those years.

## II. *Deduction of Legal Fees*

Section 265[3] precludes a deduction for amounts paid for legal fees which are allocable to a class of income exempt from taxation. Sec. 1.265-1(c), Income Tax Regs., provides as follows:

Expenses and amounts otherwise allowable which are directly allocable to any class or classes of exempt income shall be allocated thereto; and expenses and amounts directly allocable to any class or classes of nonexempt income shall be allocated thereto. If an expense or amount otherwise allowable is indirectly allocable to both a class of nonexempt income and a class of exempt income, a reasonable proportion thereof

---

[3]Sec. 265 provides, in relevant part, as follows:

SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME
* * * No deduction shall be allowed for—
    (1) EXPENSES.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle.

determined in the light of all the facts and circumstances in each case shall be allocated to each.

We have held that $40,000 of the $80,000 settlement payment is excludable from petitioners' 1983 income. Therefore, because part of the total settlement award is exempt from tax, the $30,000 in legal fees paid in relation to the settlement must be allocated between the exempt portion and the nonexempt portion of the settlement award. *Metzger v. Commissioner*, 88 T.C. at 860; *Church v. Commissioner*, 80 T.C. at 1110. The proper allocation results in a deduction of $15,000.

## III. *Addition to Tax*

With respect to returns filed after December 31, 1982, section 6661(a) imposes an addition to tax equal to 10 percent of the underpayment of tax attributable to a substantial understatement of income tax. The Omnibus Budget Reconciliation Act of 1986, Pub. L. 99-509, 100 Stat. 1951, increased the addition to tax to 25 percent for additions to tax assessed after October 21, 1986. *Pallottini v. Commissioner*, 90 T.C. 498 (1988).

Section 6661(b)(1) defines a substantial understatement of income tax as an understatement exceeding the greater of 10 percent of the tax required to be shown on the return for the year or $5,000. The amount of the understatement is to be reduced in accordance with the provisions of section 6661(b)(2)(B).

Section 6661(b)(2)(B) provides:

(B) REDUCTION FOR UNDERSTATEMENT DUE TO POSITION OF TAXPAYER OR DISCLOSED ITEM.—The amount of the understatement under subparagraph (A) shall be reduced by that portion of the understatement which is attributable to—
(i) the tax treatment of any item by the taxpayer if there is or was substantial authority for such treatment, or
(ii) any item with respect to which the relevant facts affecting the item's tax treatment are adequately disclosed in the return or in a statement attached to the return.

Petitioners did not disclose the unreported income on their 1983 return. Petitioners argue, however, that their position with respect to this unreported income was supported by substantial authority.

In evaluating whether a taxpayer's position regarding the tax treatment of an item is supported by substantial authority, the weight of authorities in support of the taxpayer's position must be substantial in relation to the weight of authorities supporting contrary positions. Sec. 1.6661-3(b)(1), Income Tax Regs. Petitioners argue that they relied on Internal Revenue Service Publication 17 in determining whether the settlement damages were taxable income. That publication, however, quoted above, is not authority for the characterization of the amounts petitioner received as damages for personal injury rather than as back wages.

Petitioners also argue that they relied on the payor Carlisle's intent as stated in its March 20, 1984, letter, and on cases holding that the payor's intent was determinative of the nature of the payments. That letter, however, set forth alternative treatments for the settlement payments, and specifically declined to offer any individual tax advice. Rather than supporting their reliance argument, the letter constitutes notice of a potential dispute about taxability. Petitioners might then have avoided the addition to tax by adequate disclosure.

Finally, petitioners argue that they are entitled to a waiver of the addition to tax under section 6661(c). We are not persuaded, however, that petitioners qualify for a waiver and cannot conclude that a failure to provide a waiver is an abuse of respondent's discretion. We believe that this is the type of case where Congress intended doubts about taxability to be the subject of a disclosure on the return if the taxpayer is to avoid the addition to tax.

Because the parties have stipulated that petitioners may use the income-averaging method of reporting the taxable portion of the settlement payment in income for 1983, it is not clear whether petitioners substantially underreported their tax liability on their 1983 tax return. If the Rule 155 proceeding, which we will direct, reveals that petitioners' understatement of income tax liability is "substantial" as defined in section 6661(b)(1)(A), the addition to tax under section 6661(a) will be sustained.

To reflect the foregoing and other issues settled by the parties,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

NIMS, CHABOT, PARKER, WHITAKER, KÖRNER, HAMBLEN, CLAPP, SWIFT, JACOBS, GERBER, WRIGHT, PARR, WILLIAMS, WELLS, RUWE, WHALEN and COLVIN, *JJ.*, agree with this opinion.