LEONARD F. DIBLE and BARBARA H. DIBLE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dible v. Commissioner
Docket Nos. 40734-86; 39228-87
United States Tax Court
T.C. Memo 1989-589; 1989 Tax Ct. Memo LEXIS 585; 58 T.C.M. (CCH) 556; T.C.M. (RIA) 89589; October 30, 1989
Jeffrey S. Dible, for the petitioners. Deborah M. Leonard, for the respondent. WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: By two notices of deficiency dated July 17, 1986, and December 7, 1987, respondent determined the following deficiencies in petitioners' Federal income tax: Year
Deficiency 1982
$ 34,686.00
1983
32,167.00
After concessions, the remaining issue for decision is whether payments *586 received by petitioner (all references to petitioner are to Leonard F. Dible) during taxable years 1982 and 1983 are excludable from gross income under section 104(a)(2) [1] as damages received on account of personal injury. FINDINGS OF FACT Some facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated by this reference. Petitioners, Leonard F. Dible and Barbara H. Dible, resided in Lafayette, Indiana, when they filed their petition in this case. Petitioner was first employed by the Aluminum Company of America (hereinafter referred to as "ALCOA") in 1951. From March 1973 through August 1979, petitioner was Works Manager of the Lafayette Works Plant located in Lafayette, Indiana, and was responsible for the manufacturing performance of the plant. In 1979, ALCOA reorganized its management structure, eliminating the position of Works Manager. A new position, Operations Manager, was created to operate the Lafayette Works Plant. *587 The new position was expanded to include responsibilities for sales and marketing. Petitioner's superiors at ALCOA felt he lacked the human relations skills necessary to effectively manage the sales and marketing operations. Therefore, petitioner was not placed in the newly created Operations Manager position. Instead, petitioner was offered, and accepted, the position of Project Manager of Flat Rolled Products in Pittsburgh, Pennsylvania. Petitioner was disappointed at not being named to the new Operations Manager position and expressed his dissatisfaction to his co-workers and superiors. In addition, petitioner was disturbed by an internal memorandum written by Charles Ligon, an ALCOA officer. The memorandum, dated February 15, 1979, was addressed to another ALCOA officer and discussed Ligon's observations of petitioner. Petitioner was particularly disturbed by Ligon's assertion, based on conversations with ALCOA's consulting psychiatrist, that petitioner had paranoid tendencies which would affect his ability to function in a position where strong human relations skills were required. During this period petitioner complained to his superiors that other ALCOA employees *588 were avoiding him and spreading rumors about him. In early 1982, petitioner applied for a position as Technical Manager within ALCOA. On March 3, 1982, petitioner was notified that he was not appointed to the position because of his inadequate human relations skills. As of March 3, 1982, petitioner qualified for early retirement from ALCOA under a job elimination program known as the 70/80 Retirement Plan. On March 3, 1982, petitioner informed his immediate supervisor, Edward M. Kasody, of his desire to take early retirement if the company paid him, in addition to his normal retirement benefits, a supplemental sum equivalent to two years' salary. Kasody was not an officer of ALCOA and had no authority to accept petitioner's offer. Kasody reported petitioner's retirement offer to his superior, Ronald R. Hoffman, vice president of Flat Rolled Products, and Russell W. Porter, Jr., ALCOA's Managing General Attorney. Hoffman had sole authority to accept petitioner's proposal. Because he was aware of petitioner's dissatisfaction with ALCOA, Hoffman accepted petitioner's proposal. On March 4, 1982, Porter drafted a letter agreement granting petitioner early retirement under the *589 70/80 Retirement Plan and a supplemental sum of $ 136,200 (equivalent to two years' salary) to be paid in four installments during 1982 and 1983. Such supplemental retirement payments were common when a manager retired or had his position terminated. In addition, the letter agreement contained a standard clause releasing ALCOA and its officers from any claims arising out of petitioner's employment. It was the policy of ALCOA to secure such releases in all instances of early retirement with supplemental sums. At the time Porter drafted the agreement and Hoffman approved it, they were unaware that petitioner was considering an action against ALCOA or any of its officers. The letter agreement was presented to petitioner by Kasody on March 4, 1982. Petitioner objected to the release provisions of the letter because he was considering an action for libel against Charles Ligon based on the memorandum dated February 15, 1979. Kasody refused to renegotiate any part of the letter agreement. On March 8, 1982, petitioner signed the letter agreement in its original form, adding a provision that he be paid for his accrued vacation time. The letter agreement did not specify the intent *590 or purpose of either party in entering into the agreement. ALCOA made the agreed to supplemental payments through their payroll department and withheld Federal income taxes. The supplemental payments were reported to petitioner on Forms W-2 for the years 1982 and 1983. Petitioner never filed an action against ALCOA or any of its officers. In his notices of deficiency, respondent determined that petitioner had improperly excluded from gross income the $ 68,200 he received in 1982 and the $ 68,000 he received in 1983. OPINION Under section 61(a) "gross income" means all income from whatever source derived, unless otherwise provided. Section 104(a)(2) excludes from gross income damages received on account of personal injuries or sickness. "Damages received" means an amount received through prosecution of a legal action based on tort-type rights, or through a settlement agreement entered into in lieu of such prosecution. Sec. 1.104-1(c), Income Tax Regs.
In the context of a settlement agreement, the availability of the section 104(a)(2) exclusion from gross income depends on the nature of the claim settled, not on the validity of the claim. Seay v. Commissioner, 58 T.C. 32, 37 (1972). *591 This determination is a factual one, and petitioner bears the burden of proving that respondent's determination is erroneous. Rule 142(a). In the absence of an express personal injury settlement agreement, the most important factor in applying section 104(a)(2) is the intent of the payor in making the payment. Miller v. Commissioner, 93 T.C. (September 13, 1989); Rickel v. Commissioner, 92 T.C. 510 (1989). Petitioner argues that the supplemental payments were made in lieu of his threatened libel action against Charles Ligon. Respondent argues that the supplemental payments were intended as severance pay in order to induce petitioner to retire. We hold that ALCOA's intent in making the supplemental payments was to induce petitioner's acceptance of early retirement, and that therefore the letter agreement was not entered into in lieu of tort-type rights. Petitioner's supervisors at ALCOA felt he could not adequately perform under ALCOA's new organizational structure. Ronald R. Hoffman and Russell W. Porter, Jr., testified that at the time they offered the agreement to petitioner they were unaware that he was contemplating an action against either ALCOA *592 or Charles Ligon. Hoffman testified that the supplemental payments were offered in recognition of petitioner's 30 years of service to ALCOA. Porter testified that if the supplemental payments had been made in settlement of a threatened legal action he would have drafted a more substantial release agreement and the payments would have been made out of accounts payable, rather than the payroll account. The testimony of Hoffman and Porter was credible, consistent, and unimpeached. Petitioner testified that the supplemental payments were made in lieu of a threatened libel action against Charles Ligon. However, petitioner introduced no corroborating evidence to support his testimony, which was clearly refuted by the testimony of Hoffman and Porter. We are not required to accept petitioner's self-serving testimony. Geiger v. Commissioner, 440 F.2d 688 (9th Cir. 1971), affg. a Memorandum Opinion of this Court. Petitioner argues that the testimony of his supervisor, Edward M. Kasody, supports his position. Kasody testified that petitioner requested the supplemental payment because he felt he had been wronged by ALCOA. His vague and inconsistent testimony establishes *593 nothing more than that petitioner was a disgruntled employee. Petitioners must meet their burden of proof with evidence, not assumption and speculation. Wood Corp. of Delaware v. Commissioner, 22 B.T.A. 1182 (1931), affd. 63 F.2d 1023 (6th Cir. 1933). Respondent's determination that the section 104(a)(2) exclusion is inapplicable to the supplemental payments is sustained. In light of the foregoing, Decisions will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩