T.C. Memo. 2001-144


UNITED STATES TAX COURT


GREG McINTOSH AND SHEILA R. McINTOSH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 15076-99.            Filed June 19, 2001.


Greg McIntosh and Sheila R. McIntosh, pro sese.

<u>Paul L. Dixon</u>, for respondent.



MEMORANDUM FINDINGS OF FACT AND OPINION


DEAN, <u>Special Trial Judge</u>:  This case is before the Court on
petitioners' Motion for Award of Administrative and Litigation
Costs filed pursuant to section 7430 and Rule 231.  All
references to section 7430 are to that section as in effect at
the time the petition was filed.  Unless otherwise stated, all

other section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent has filed a response to petitioners' motion. Respondent agrees that petitioners:  (a) Have substantially prevailed with respect to the amount in controversy, (b) meet the net worth requirements as provided by law, (c) have exhausted their administrative remedies, (d) have not unreasonably protracted the administrative or Court proceedings, and (e) have claimed a reasonable amount of costs.

Respondent does not agree, however, that his positions in the administrative or Court proceedings were not substantially justified.  The issue for decision, therefore, is whether respondent's positions in the underlying proceedings were substantially justified.

Although petitioners initially requested a hearing in this case, the parties have agreed upon a stipulation of facts.  We conclude that a hearing is not necessary to decide this motion. See Rule 232(a)(2).  Accordingly, we rule on petitioners' motion for administrative and litigation costs on the basis of the parties' submissions and the record in this case.

Petitioners resided in Shasta Lake, California, at the time they filed their petition.

FINDINGS OF FACT

Petitioners were notified by letter dated October 20, 1997, addressed to their accountant, William Brown, that their Federal income tax returns for 1995 and 1996 were to be examined by the Internal Revenue Service (IRS). At the same time, the IRS issued a Form 4564, Information Document Request (IDR), related to those years' returns. Petitioners' Federal income tax return for 1994 was already under examination by the IRS, and some of the information listed in the IDR of October 20, 1997, relates to tax year 1994.

The IDR was directed at obtaining books and records concerning petitioners' home-building income and expenses for 1994 through 1996 reported on Schedules C, Profit or Loss From Business; underlying documentation of various Schedule C items; business and personal bank statements and canceled checks for 1993 through January 31, 1997; and documentation for the sale of a personal residence and for real estate taxes for 1996.

On April 16, 1998, the IRS issued another IDR requesting essentially the same information except with more specificity for certain Schedule C items.

On June 4, 1998, the examining agent met with Mr. Brown and Greg McIntosh (petitioner). At the meeting petitioner discussed his wage activities and his Schedules C activity. Petitioner was employed as a dispatcher from March 1993 through July 1995 and was unemployed between July 1995 and May 1996. Between May and

October 1996, petitioner was a firefighter.  In December 1996 petitioner worked "at Saint Elizabeth's in Red Bluff".

Petitioner told the examiner that he was also in the business of building and selling houses.  Before 1994 petitioners had not been involved in building houses.  It was determined that petitioners did not have a contractor's license and performed no contracting work personally; they worked through subcontractors.  Petitioners maintained no set of books and failed to provide an accounting of the expenses associated with their home-building activity.  Petitioner, however, did present some folders containing receipts and canceled checks related to the building of a house on Montana Avenue in Shasta Lake, California, and to the construction of a house on Vallecito Street in Shasta Lake, California.  Among the items in the folders was a canceled check in the amount of $11,104.67 payable to the "US Bank".

In 1994, petitioners, in a part sale and part gift transaction, acquired land located at 4511 Vallecito Street in Shasta Lake, California (Vallecito property), from Sheila McIntosh's parents.  They had a house built on the property that they sold in 1996.  Petitioners reported on Schedule C the income and expenses from the Vallecito property.  They acquired another piece of property, the "Oasis Road" property, from "a grandmother" on which they built a house they intended to sell but had not sold at the time of the income tax examination.

Petitioners bought no property from unrelated third parties on which to build houses for sale.

After the June 4, 1998, meeting with petitioner and Mr. Brown, the examining agent made no further request for the items included in the previously issued IDR's but did make certain third parties contacts.

On January 15, 1999, the IRS issued to petitioners a report of proposed adjustments to their Federal income taxes for 1995 and 1996. The examining agent's letter enclosing the report states that she obtained information indicating that petitioners had lived on the Vallecito property and concludes that "I have not received adequate information to justify that you are in a business." The letter further informs petitioners that the loss for 1995 has been disallowed, and the small profit for 1996 has been "reversed out". Mr. Brown met with the examining agent to discuss the proposed adjustments and later provided the agent some additional information.

The additional information was in the form of a letter, with enclosures, dated February 11, 1999. The letter primarily addresses the issue of whether the Vallecito property was petitioners' personal residence or was held for sale in the ordinary course of business. The letter recites petitioners' position that it was not their personal residence. Petitioners admit in the letter, however, that they used the Vallecito property as an office from February to October 1995, that they

stored their furniture in the house, that the property was occupied by petitioners' cousin from December 1995 through March 1996, and that the house was covered by a homeowner's insurance policy in their names. The letter, however, enclosed other letters written by third parties that were intended to show that petitioners had not used the house as a personal residence.

Respondent, on the other hand, had obtained third party information suggesting that petitioners had resided in the Vallecito property. Respondent also obtained a "Real Estate Transfer Disclosure Statement" signed by petitioners on July 19, 1995, indicating that the sellers, petitioners, were occupying the property.

On May 5, 1999, the examining agent asked petitioners to agree to extend the period for the assessment of income tax. Through Mr. Brown, in a letter dated May 10, 1999, petitioners declined to extend the period for assessment.

A statutory notice of deficiency for the years 1995 and 1996, along with a very detailed explanation of the items of adjustment to petitioners' income, was issued on July 21, 1999.

Mr. Brown sent to the IRS a letter dated September 2, 1999, with enclosures. The enclosures were intended to be "documentation for two issues that were raised in the Notice of Deficiency and one issue being raised by the taxpayers". Among the enclosures was documentation showing that petitioners had in March 1996 contracted to sell the Vallecito property to

petitioners's cousin and his wife, Keith and Renee McIntosh.  In addition, petitioners provided verification for property taxes paid in 1995 and legal and professional fees paid in 1996.

The enclosures further included a copy of an escrow statement dated August 30, 1994, from the Fidelity National Title Insurance Company of California (Fidelity National) for "PROPERTY ADDRESS:  AP #007-060-04" crediting petitioners with a deposit of $11,104.67 (the same amount as the "US Bank" check mentioned above).  Petitioners also enclosed a copy of a handwritten receipt to petitioners from Fidelity National dated August 29, 1994, in the amount of $11,104.67, naming "US Bank" as "maker". The items were submitted as verification of a portion of the cost of goods sold claimed on the Schedules C for 1996.

The petition in this case was filed on September 16, 1999. The Court filed respondent's answer on October 26, 1999. Mr. Brown faxed additional information to the IRS Office of Appeals (Appeals) on November 11, 1999.  The information was related to petitioners' 1994 tax year.  Mr. Brown settled the 1994 tax issues with the IRS, and he considered the "auto, property taxes, and insurance" issues to be "carryover" issues from the settlement to 1996.

In a letter to Mr. Brown dated November 17, 1999, Appeals requested additional information about the settlement of the 1994 "carryover" adjustments and additional information to verify insurance and interest expenses.  Appeals also requested

additional information on the Vallecito property, including verification that the escrow statement referencing the $11,104.67 deposit related to the Vallecito property and not to another. The letter also states that "there appears to be conflicting evidence as to whether the taxpayers resided in the Vallecito property."

On January 11, 2000, Appeals faxed to Mr. Brown an offer in settlement of the disputed items for the 1995 and 1996 tax years. A number of items were included in the settlement. Among those agreed upon was the cost of goods sold adjustment for 1996 of $8,412. It was reduced by $9,097, the US Bank check amount of $11,104.67 less $2,008.06 of expenditures previously allowed as capital items that for settlement purposes were to be allowed as expense deductions in 1995. Under the proposed settlement, the 1996 adjustment for legal and professional fees of $625 would be conceded by the IRS as well as the utilities adjustment of $547 for 1995. The letter makes an inquiry as to: "What is the additional $153 of utilities (700-547)?" That same day the parties participated in a telephone conference regarding the settlement offer.

A revised settlement offer was accepted on January 19, 2000. On February 10, 2000, the Court issued its notice setting petitioners' case for trial at the May 4, 2000, trial calendar in Reno, Nevada. The documents embodying the settlement agreement were signed by petitioners on February 22, returned to

respondent's counsel March 28, and signed by respondent's counsel and sent to the Tax Court on April 10, 2000.

Under the settlement agreement between the parties, the amounts proposed in the Appeals letter of January 11, 2000, for cost of goods sold and legal and professional fees for 1996 were accepted.  The utilities expense adjustment for 1995 of $547 was reduced by $700 under the agreement.

The parties have stipulated that petitioners take the position that respondent was not substantially justified in making adjustments to petitioners':  (a) Deduction of certain utilities expenses for 1995; (b) deduction of a portion of car and truck, insurance, office, and utilities expenses for 1995; (c) claim of a portion of cost of goods sold for 1996; and (d) deduction of legal and professional fees for 1996.

OPINION

We apply section 7430 as most recently amended by Congress in the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 3101, 112 Stat. 685, 727. However, the amendments made by RRA 1998 to section 7430 apply only to costs incurred or services performed after January 18, 1999. See id. sec. 3101(g), 112 Stat. 729. To the extent the claimed costs were incurred on or before January 18, 1999, we shall apply section 7430 as amended by the Taxpayer Relief Act of 1997, Pub. L. 105-34, secs. 1285, 1453, 111 Stat. 1038, 1055.

Requirements Under Section 7430

Under section 7430(a), a judgment for litigation costs incurred in connection with a court proceeding may be awarded only if a taxpayer: (1) Is the "prevailing party"; (2) has exhausted his or her administrative remedies within the IRS; and (3) did not unreasonably protract the court proceeding. Sec. 7430(a) and (b)(1), (3). Similarly, a judgment for administrative costs incurred in connection with an administrative proceeding may be awarded under section 7430(a) only if a taxpayer: (1) Is the "prevailing party"; and (2) did not unreasonably protract the administrative proceeding. Sec. 7430(a) and (b)(3).

A taxpayer must satisfy each of the respective requirements in order to be entitled to an award of litigation or administrative costs under section 7430. See Rule 232(e). Upon

satisfaction of these requirements, a taxpayer may be entitled to reasonable costs incurred in connection with the administrative or court proceeding. See sec. 7430(a)(1) and (2), (c)(1) and (2).

To be a prevailing party, the taxpayer must substantially prevail with respect to either the amount in controversy or the most significant issue or set of issues presented and satisfy the applicable net worth requirement. See sec. 7430(c)(4)(A). Respondent concedes that petitioners have satisfied the requirements of section 7430(c)(4)(A). Petitioners have nevertheless failed to qualify as the prevailing party if respondent can establish that respondent's position in the administrative and court proceedings was substantially justified. See sec. 7430(c)(4)(B).

Substantial Justification

The Commissioner's position is substantially justified if, on the basis of all of the facts and circumstances and the legal precedents relating to the case, the Commissioner acted reasonably. See Pierce v. Underwood, 487 U.S. 552 (1988); Sher v. Commissioner, 89 T.C. 79, 84 (1987), affd. 861 F.2d 131 (5th Cir. 1988). In other words, to be substantially justified, the Commissioner's position must have a reasonable basis in both law and fact. See Pierce v. Underwood, supra; Rickel v. Commissioner, 900 F.2d 655, 665 (3d Cir. 1990), affg. in part and revg. in part on other grounds 92 T.C. 510 (1989). A position is substantially justified if the position is "justified to a degree

that could satisfy a reasonable person."  <u>Pierce v. Underwood</u>, <u>supra</u> at 565 (construing similar language in the Equal Access to Justice Act).  Thus, the Commissioner's position may be incorrect but nevertheless be substantially justified "'if a reasonable person could think it correct'."  <u>Maggie Management Co. v. Commissioner</u>, 108 T.C. 430, 443 (1997) (quoting <u>Pierce v. Underwood</u>, <u>supra</u> at 566 n.2).

The relevant inquiry is "whether * * * [the Commissioner] knew or should have known that * * * [his] position was invalid at the onset".  <u>Nalle v. Commissioner</u>, 55 F.3d 189, 191 (5th Cir. 1995), affg. T.C. Memo. 1994-182.  We look to whether the Commissioner's position was reasonable given the available facts and circumstances at the time that the Commissioner took his position.  See <u>Maggie Management Co. v. Commissioner</u>, <u>supra</u> at 443; <u>DeVenney v. Commissioner</u>, 85 T.C. 927, 930 (1985).

The fact that the Commissioner eventually concedes, or even loses, a case does not establish that his position was unreasonable.  See <u>Estate of Perry v. Commissioner</u>, 931 F.2d 1044, 1046 (5th Cir. 1991); <u>Sokol v. Commissioner</u>, 92 T.C. 760, 767 (1989).  However, the Commissioner's concession remains a factor to be considered.  See <u>Powers v. Commissioner</u>, 100 T.C.

457, 471 (1993), affd. in part, revd. in part and remanded on another issue 43 F.3d 172 (5th Cir. 1995).

As relevant herein, the position of the United States that must be examined against the substantial justification standard with respect to the recovery of administrative costs is the position taken by respondent as of the date of the notice of deficiency. See sec. 7430(c)(7)(B). The position of the United States that must be examined in light of the substantial justification standard with respect to the recovery of litigation costs is the position taken by respondent in the answer to the petition. See Bertolino v. Commissioner, 930 F.2d 759, 761 (9th Cir. 1991); Sher v. Commissioner, 861 F.2d 131, 134-135 (5th Cir. 1988). Ordinarily, we consider the reasonableness of each of these positions separately. See Huffman v. Commissioner, 978 F.2d 1139, 1144-1147 (9th Cir. 1992), affg. in part, revg. in part and remanding on other issues T.C. Memo. 1991-144. In the present case, however, we need not consider two separate positions because there is no indication that respondent's position changed between the issuance of the notice of deficiency (on July 21, 1999) and the filing of the answer to the petition (on October 26, 1999). See Swanson v. Commissioner, 106 T.C. 76, 87 (1996).

In order to decide whether respondent's position was substantially justified, we must review the substantive merits of the case.

### Reasonable Basis in Fact

Petitioners do not suggest that respondent applied the wrong legal standard in taking positions on their documentation of cost of goods sold for 1995, capitalized costs from 1994, legal and professional expenses for 1996, and utilities expenses for 1996. Petitioners argue that respondent's positions on those adjustments were not reasonable in fact based on the evidence they presented.

As to that argument, respondent asserts that it was incumbent upon petitioners to substantiate the amounts and purposes of the items claimed. It is reasonable, according to respondent, not to concede adjustments until he has received and verified adequate substantiation for the items in question. He therefore concludes that as to the four stated adjustments, his position was reasonable when taken and appropriately conceded when substantiation was provided to Appeals. The Court agrees.

Taxpayers are required to maintain books and records in accordance with rules and regulations prescribed by the Secretary. See sec. 6001. Generally, taxpayers must "keep such permanent books of account or records, including inventories" sufficient to establish gross income, deductions, or other matters required to be shown on the return. Sec. 1.6001-1(a), Income Tax Regs. Accounting records include the taxpayer's regular books and other records and data necessary to support entries on books and returns. See sec. 1.446-1(a)(4), Income Tax

Regs. Such books and records should properly classify expenditures as between capital and expense. See sec. 1.446-1(a)(4)(ii), Income Tax Regs.

Petitioners did not maintain a set of books and failed to provide an accounting of the expenses associated with their home-building activity. Although petitioners presented some folders containing receipts and canceled checks related to the building of the Vallecito property, they were intermingled with those from the construction of a personal home on Montana Avenue, Shasta Lake, California. In an attempt to verify the amounts shown on petitioners' returns, respondent's agent had to reconstruct the costs incurred in acquiring and constructing the Vallecito property.

### Cost of Goods Sold

Any amount claimed as cost of goods sold must be substantiated. See sec. 6001; Ranciato v. Commissioner, T.C. Memo. 1993-536. Among the items in the folders presented by petitioners during the examination was a canceled check in the amount of $11,104.67 payable to the "US Bank". It was not readily apparent that the US Bank check represented an amount associated with the cost of acquiring or constructing the Vallecito property. It was only after the notice of deficiency was issued on July 21, 1999, that petitioners supplied on September 2, 1999, a copy of an escrow statement indicating that petitioners had made a deposit for an unnamed property in the

amount of $11,104.67.  The property for which the escrow deposit was made was not identified in a way that was understandable to the examining Internal Revenue agent ("PROPERTY ADDRESS:  AP #007-060-04").

Appeals later requested on November 17, 1999, identifying information for the purchase and sale of the Vallecito property. The identifying information must therefore have been received sometime after that date, and after the October 26, 1999, filing of respondent's answer in the case.

### Capitalized Costs From 1994

During the examination of petitioners' 1994 Federal income tax return, respondent disallowed Schedule C deductions for automobile expenses, property taxes, and insurance.  Petitioners allege that there was an "informal agreement" to allow them to capitalize a portion of the costs and to allow "deduction" of them in 1996.  The notice of deficiency for 1996 does not reflect such an informal agreement.

There is but scant evidence in the record of an informal agreement as alleged by petitioners.  It is not apparent what the terms of such an agreement may have been.  And it was, by petitioners' own description, an "informal" agreement.  After reviewing documents submitted by petitioners on November 11, 1999, Appeals agreed to allow petitioners to capitalize as part of the cost of the Vallecito property a portion of the 1994 expenditures for automobile expenses and property taxes.

### Legal and Professional Expenses

Respondent disallowed a deduction for a legal fee expense and a tax preparation fee expense for 1996. After consideration of information sent in by petitioners on September 2, 1999, respondent conceded most of the adjustment.

### Utilities Expenses

On Schedules C of their 1995 return, petitioners claimed $547 as an expense for utilities at the Vallecito property. Because respondent had evidence that petitioners had resided at the Vallecito property, he took the position that the utilities expense was a nondeductible personal living expense. Petitioners had submitted statements from individuals indicating that petitioners did not reside at the property. As late as November 17, 1999, Appeals requested additional information concerning the occupation of the Vallecito property. For settlement purposes, respondent conceded his position although the evidence remained ambiguous. See Creske v. Commissioner, T.C. Memo. 1990-318, affd. 946 F.2d 43 (7th Cir. 1991).

It was reasonable for respondent to make adjustments for items and to refuse to concede the adjustments until he had received and verified petitioners' substantiation for the amounts adjusted. See Beecroft v. Commissioner, T.C. Memo. 1997-23; Simpson Fin. Servs., Inc. v. Commissioner, T.C. Memo. 1996-317; McDaniel v. Commissioner, T.C. Memo. 1993-148.

We are persuaded that respondent's positions on the above issues were reasonable. Respondent's positions were based on petitioners' failure to fully substantiate or account for the respective items. Further, the issues were settled within a reasonable time after petitioners gave sufficient information to respondent. See Harrison v. Commissioner, 854 F.2d 263, 265 (7th Cir. 1988), affg. T.C. Memo. 1987-52; Wickert v. Commissioner, 842 F.2d 1005 (8th Cir. 1988), affg. T.C. Memo. 1986-277; Ashburn v. United States, 740 F.2d 843 (11th Cir. 1984); McDaniel v. Commissioner, supra.

### Reasonable Basis in Law

According to petitioners, respondent unreasonably determined that car and truck, insurance, office, and utilities expenses totaling $2,008.06 incurred in 1995 were not deductible expenses but instead must be capitalized into the cost of the Vallecito property sold in 1996. Petitioners appear to argue that respondent's position was legally infirm, although their argument seems to be inconsistent with the "informal agreement" they urge for the treatment of similar 1994 expenses as capital expenditures.

Although petitioners did not maintain a set of books and failed to provide an accounting of the expenses associated with their home-building activity, they reported a reduction of $77,462 of Schedule C gross receipts for "cost of goods sold" in connection with their home-building activity for 1996. Because

of their lack of an accounting for costs, respondent attempted to reconstruct them from petitioners' receipts and canceled checks.

In the reconstruction, respondent included as cost of goods sold $2,008.06 of indirect costs incurred in 1995 along with other verified Vallecito costs of $61,353.99 to arrive at a cost of goods sold of $69,049.98, an amount less than that reported on the return.  Had respondent allowed the $2,008.06 as expenses for 1995, the adjustment to cost of goods sold for 1996 would have been larger by that amount.

The uniform capitalization rules of section 263A(a)(1) require that all direct costs and certain indirect costs allocable to certain property be included in inventory, or capitalized if such property is not inventory.  Items that would not otherwise be taken into account[1] in computing taxable income may not be taken into account as costs allocable to property under section 263A.  See sec. 263A(a).

For settlement purposes, after verification of the purpose of the $11,104.67 check to the US Bank, Appeals agreed that the $2,008.06 in costs was associated with the construction or acquisition of the Vallecito property sold in 1996 and is deductible as expenses for 1995.  Appeals cited as authority for the agreement the de minimis rule of the simplified production method of section 1.263A-2(b)(3)(iv), Income Tax Regs.  The

---

[1]If, for example, an item of indirect cost were not properly substantiated under sec. 274, it would not be a proper cost under sec. 263A.  See sec. 1.263A-1(c)(2), Income Tax Regs.

simplified production method <u>may be elected</u> for any trade or business as a method for determining costs allocable to ending inventories of produced and other eligible property on hand at the end of the year.  See sec. 1.263A-2(b)(1) and (2), Income Tax Regs.  The record in this case fails to show that petitioners ever made any such election or that they made any argument to respondent that they relied upon the above provision when reporting the expenses on their return for 1995.

We find that respondent's position that the $2,008.06 represented an amount that had to be capitalized into the cost of the Vallecito property was a reasonable application of the law given the available facts and circumstances at the time that respondent took his position.

<u>Conclusion</u>

We find that respondent's positions on the disputed issues were reasonable positions sufficiently supported by the facts and circumstances in petitioners' case and the existing legal precedent.  See <u>Pierce v. Underwood</u>, 487 U.S. 552 (1988). Because we find respondent's positions to have been reasonable, we cannot find petitioners to be "prevailing" parties, and their motion will therefore be denied.

To reflect the foregoing,

<u>An appropriate order will</u>
<u>be issued, and decision will be</u>
<u>entered under Rule 155</u>.